Mike GIBBONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–88–00055–CR.

Court of Appeals of Texas, Tyler.

July 31, 1990.

and notebooks evidencing drug transactions were recovered in the search. Appellant was indicted with thirty-two others for the offense of engaging in organized criminal activity. The State alleged that appellant, with the intent to participate in a combination, conspired to commit delivery of cocaine.

In his first point of error, appellant complains of the trial court's refusal to submit a charge on conspiracy to deliver cocaine. A jury must be charged on the lesser included offense if the lesser included offense is included in the proof necessary to establish the offense charged, and if there is some evidence in the record that if defendant is guilty, he is guilty only of the lesser offense. *Livingston v. State*, 739 S.W.2d 311, 336 (Tex.Cr.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Cr.App.1981).

Criminal conspiracy is not a lesser-included offense of the offense of engaging in organized criminal activity. To prove criminal conspiracy the state would be required to prove delivery of 28 grams or more of cocaine because criminal conspiracy has to be an aggravated offense when it involves a controlled substance. *Baker v. State*, 547 S.W.2d 627, 629 (Tex.Cr.App. 1977); Tex.Health & Safety Code Ann. §§ 481.108 and 481.112(c) (Vernon 1989). Yet under the organized crime statute no specific amount of delivery of cocaine had to be proved. Furthermore, although both offenses are first degree felonies, the conspiracy offense carries a greater punishment range. The organized crime punishment range is life or **not less than 5 or** more than 99 years. The punishment range for criminal conspiracy involving the aggravated offense of delivery of cocaine is for life or for a term of not more than 99 years or **less than 15 years,** fine not to exceed $250,000. Tex.Health & Safety Code Ann. § 481.112 (Vernon 1989). Since the offense of conspiracy requires both greater proof and carries greater punish-

Gregory Neeley, Longview, for appellant.

C. Patrice Savage, Longview, for appellee.

**BILL BASS, Justice.**

A jury found appellant guilty of the offense of engaging in organized criminal activity and assessed punishment at fifty years' confinement in the Texas Department of Corrections. Appellant brings eight points of error.

Appellant was tried with seven co-defendants. The evidence at trial showed that numerous law enforcement agencies were involved in an investigation conducted in Longview in 1986. As part of the investigation, co-defendants John and Judy Lindley's apartment was under surveillance and the apartment telephone was wiretapped. After obtaining a search warrant, the officers searched the Lindley's apartment and a car they were using. Over three pounds of cocaine, drug paraphernalia, weapons,

ment, it is neither a lesser nor an included offense of engaging in organized criminal activity, and the trial court did not err in refusing to give the requested charge. Appellant's first point of error is overruled.

■ In his second and fifth points of error, appellant complains that the trial court erred by not granting his motion for severance. He contends that because he was forced to go to trial with the target defendants (John and Judy Lindley) he was prejudiced as a matter of law. He also argues the court's decision to group the defendants in this manner was a comment on the weight of the evidence.

■ A trial court has discretion to try two or more defendants jointly, if they were jointly or separately indicted for the same offense or for any offense growing out of the same transaction. Tex.Code Crim.Proc.Ann. art. 36.09 (Vernon 1981). However, if it is made known to the court that there exists an admissible previous conviction against one defendant, or that a joint trial would clearly prejudice either defendant, then upon timely motion the trial court shall order a severance as to the defendant whose joint trial could prejudice the other defendant. *Id.* To preserve a complaint that the trial court abused its discretion in failing to order a severance, a defendant must make a timely motion to sever and introduce evidence thereon. *Id.*

■ A trial court has considerable discretion in deciding whether a joint trial would be so prejudicial to a particular defendant that a severance should be ordered. *Simon v. State*, 743 S.W.2d 318, 322 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). The defendant has the heavy burden of showing clear prejudice resulting from the denial of a request for severance. *Morales v. State*, 466 S.W.2d 293 (Tex.Cr. App.1970).

■ Gibbons presented evidence trying to establish that the court determined how to group the numerous defendants by looking at the degree of culpability of each

defendant. However, evidence that the degree of guilt would be different among the defendants does not establish that degree of prejudice which would require reversal. *Morales*, 466 S.W.2d at 296; *Mahavier v. State*, 644 S.W.2d 129, 133 (Tex.App.—San Antonio 1982, no pet.). Appellant failed to show clear prejudice resulting from the trial court's denial of the motion to sever. Appellant's second and fifth points of error are overruled.

■ In his third point of error, appellant contends the trial court erred by refusing to give the jury his requested instruction on specific intent. The state contends the trial court did not commit reversible error because the charge requested is substantially the same as the charge given.

The appellant requested the following specific intent instruction:

> Our law provides that to be guilty of engaging in organized crime as alleged in the indictment, the defendant must, with the intent to establish, maintain or participate in a combination or in the profits of a combination, commit the offense of conspiracy to deliver a controlled substance, to wit, cocaine. If you believe from the evidence beyond a reasonable doubt that defendant committed the offense of conspiracy to distribute a controlled substance, to wit, cocaine, but you have a reasonable doubt as to whether at the time of the commission of the offense he intended to establish, maintain or participate in a combination or in the profits of a combination, you will acquit the defendant of engaging in organized crime.

The charge given to the jury includes the following:

> Our law provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, such person knowingly or intentionally conspires to commit unlawful delivery of a controlled substance....

> Before you would be warranted in convicting any one of the defendants for

engaging in organized crime as alleged you must be satisfied from the evidence beyond a reasonable doubt:

(A) of the existence of a combination of five or more persons as alleged who collaborated in carrying on criminal activities as alleged; and

(B) of the intent on the part of such defendant to establish, maintain or participate in the combination or its profits as alleged; and

(C) of the agreement by such defendant with at least one other alleged person that the unlawful conduct alleged be engaged in by one or more of them; and

(D) that the defendant and at least one other alleged person performed an overt act as alleged in pursuance of the agreement.

Unless all of the foregoing requirements have been proved beyond a reasonable doubt as to any individual defendant, under the instructions herein given you, then you must acquit that defendant and consider whether the requirements have been proved as to the other defendants individually.

We agree with the State that there is no error since the charge requested was substantially similar to the charge given. *Le-Duc v. State*, 593 S.W.2d 678, 684 (Tex.Cr. App.1979); *Diaz v. State*, 648 S.W.2d 721, 723 (Tex.App.—Corpus Christi 1983, no pet.). Appellant's third point of error is overruled.

In his fourth point of error, appellant contends the trial court erred by commenting on appellant's failure to testify while Ranger Akin was cross-examined. Gibbons' attorney asked Ranger Akin, "Were you aware that Mike Gibbons had a cocaine habit of $500.00 per day at the time you made these arrests?" The State objected that defense counsel was testifying. The trial court sustained the objection. Defense counsel said, "I can't ask him if he knew that, your Honor?" The court replied, **"If you'll lay the predicate for it. Are you telling the Court you're going to introduce that testimony to that effect?"** Defense counsel replied that he would like to ask the witness the question. The court then had the jury retire to the jury room. When the jury returned, the court gave an instruction that the remark made by the Court should not be interpreted as an opinion by the Court as to what any defendant should or should not present. Appellant contends the court's comment and inquiry constituted an inquiry as to whether appellant intended to testify. However, the court's remark is not even an indirect comment on appellant's failure to testify. Moreover, the comment occurred before the State closed its case and appellant rested his case. A statement containing no direct allusion to a failure to testify, and made prior to the time defendant rests cannot refer to a failure to testify which has not yet occurred. *McCarron v. State*, 605 S.W.2d 589, 595 (Tex.Cr.App.1980). Appellant's fourth point of error is overruled.

In his sixth point of error, appellant complains the trial court violated his confidential communication privilege by admitting two taped telephone conversations involving his spouse. The confidential communication privilege allows a spouse to refuse to disclose, and to prevent another from disclosing, a confidential communication made to his spouse while they were married. TEX.R.CRIM.EVID. 504. A "confidential communication" is one made privately to the spouse which is not intended for disclosure to any other person. *Id.*

The first conversation merely involves appellant's wife answering the phone and speaking briefly with the caller. In the second conversation, Gibbons' spouse discussed at length with Judy Lindley her fears and concerns regarding Gibbons' drug dealing. Neither of these conversations involved communications uttered in private between a husband and wife. The confidential communication privilege was not violated.

Appellant also contends it was reversible error for the State to subpoena

and swear in his spouse as a State's witness, even though the spouse was never called to the stand to testify. He relies on cases which held that it was reversible error for the State to call a defendant's spouse as a witness and thereby force the defendant to object in the presence of the jury. *See Stewart v. State,* 587 S.W.2d 148, 153 (Tex.Cr.App.1979); *Johnigan v. State,* 482 S.W.2d 209, 210–211 (Tex.Cr. App.1972); *Bruni v. State,* 669 S.W.2d 829, 834 (Tex.App.—Austin 1984, no pet.). These cases are not applicable because they refer to the law of marital privilege as it existed prior to the Rules of Criminal Evidence. They involved the absolute marital disqualification which prevented one spouse from testifying against the other. However, with the adoption of the Rules of Criminal Evidence, the absolute marital disqualification was abandoned and the testimonial privilege was created. The testimonial privilege allows the spouse to testify voluntarily for the state, even over objections by the defendant. It provides that the spouse of the accused has a privilege not to be called as a witness for the State.

▉ The testimonial privilege is personal to the witness-spouse; the defendant spouse may not invoke it on his or her behalf or override its assertion by the witness-spouse. *See Trammell v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). Furthermore, the rule does not prohibit evidence of out-of-court statements made by the witness-spouse. *United States v. Archer,* 733 F.2d 354, 359 (5th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984). Appellant's sixth point of error is overruled.

▉ In his eighth point of error, appellant complains the trial court erred by allowing the State to use a bulletin board during jury argument. The bulletin board summarized the evidence. Appellant argues the use of the bulletin board was improper because it bolstered the State's case, created new evidence, and was an improper summary of the evidence. We disagree. The State used charts to summarize the evidence during the jury argument. These charts were not admitted into evidence. It is well settled that during jury argument a prosecutor may summarize the evidence. *Cannon v. State,* 668 S.W.2d 401, 404 (Tex.Cr.App.1984). The trial court has the discretion to permit an attorney to use visual aids, including charts, in summarizing the evidence. *Bobo v. State,* 757 S.W.2d 58, 64 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), *cert. denied,* —— U.S. ——, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989); *Vera v. State,* 709 S.W.2d 681, 687 (Tex.App—San Antonio 1986, pet. ref'd). In this case, eight defendants were tried jointly in a trial which lasted approximately two weeks. The trial included a large amount of evidence of phone conversations, book entries and testimony from officers. Considering the amount of evidence and the length of the testimony, permitting the State's use of visual aids in the form of charts during jury argument was not an abuse of discretion. Appellant's eighth point of error is overruled.

▉ In his seventh point of error, appellant contends the evidence is insufficient to support his conviction. The standard for review for both direct and circumstantial evidence is whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Marroquin v. State,* 746 S.W.2d 747 (Tex.Cr.App. 1988).

▉ Appellant does not deny the evidence against him, but he contends the evidence did not show (1) intent to participate in a combination and (2) knowledge of a combination. To be guilty of the offense of organized criminal activity, as the statute was written at the time of the offense, the actor must have committed, or conspired to commit, one of the enumerated crimes (i.e., delivery of controlled substance) with the specific intent of participating in a criminal combination of at least

five persons. TEX.PENAL CODE 71.02 (1989);[1] *Barber v. State*, 764 S.W.2d 232, 235 (Tex.Cr.App.1988). A "combination" is defined as follows:

[F]ive or more persons who collaborate in carrying on criminal activities, although:

(1) participants may not know each other's identity;

(2) membership in the combination may change from time to time; and

(3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.

TEX.PENAL CODE § 71.01. "Conspires to commit" is defined as follows:

[A] person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties.

TEXAS PENAL CODE § 71.01.

The charge to the jury read, in pertinent part, as follows:

[O]n or about the 3rd day of September, 1986, continuing until on or about the 12th day of September, 1986, ... Mike Gibbons did then and there with the intent to establish, maintain or participate in a combination or the profits of a combination, consisting of four or more of the following, in addition to Mike Gibbons, to wit: John Lindley, Judy Lindley, Terry Mack Strong, James Hammock, Chris Hudson, Cameron Dale Brooks, Kathryn Tillis Dobbins ... Marilyn Barnes ... John LaRoux.... Rexanne Garlington, David Willis, Bonnard Deardorff, Jr., ... Robert Eastham, knowingly or intentionally conspire to commit the offense of unlawful delivery of ... cocaine and did then and there agree with John Lindley, Judy Lindley, Terry Mack Strong, James Hammock, Chris Hudson, Cameron Dale Brooks, Kathryn Tillis Dobbins, Ronald Parrish or Robert Eastham to engage in conduct constituting said offense ... and in furtherance thereof Mike Gibbons performed [certain overt acts].

The evidence, viewed in the light most favorable to the verdict, showed John and Judy Lindley operated a drug-selling operation out of their apartment. There was testimony that appellant and the co-defendants in the trial purchased such large amounts of cocaine that the jury might reasonably conclude that the cocaine was purchased not just for personal use but also for resale. Evidence in the case shows that the co-defendants purchased the following amounts from John and Judy Lindley:

Terry Strong—860 grams of cocaine over 110, 111 days.

Kat Dobbins—70 grams over an 11 day period.

Dale Brooks—56 grams over a 6 day period.

Chris Hudson—968 grams in 110 days.

James Hammock—262 grams in 22 days.

Over a 112-day period, Gibbons purchased 791 grams of cocaine from the Lindleys, paying almost $46,000 in cash. The Lindleys would sell the drugs on credit. The buyers would then repay the money owed in installments. The evidence showed that some of those parties discussed that they were trying to recover money from others who owed them.

There was direct and circumstantial evidence from which the jury could infer that Gibbons accompanied John Lindley to collect money from or deliver drugs to Dale Brooks, Marilyn Barnes, Kat Dobbins, Terry Strong, and David Willis. Also, Gibbons was involved in the planning of a drug deal between John, Willis and Joe McNary.

---

1. Acts, 65th Leg., ch. 346, § 1, 1977 Tex.Gen. & Spec. Laws 922, *amended by* Acts, 71st Leg., ch. 782, § 1, 1989 Tex.Gen. & Spec. Laws 3468.

When Gibbons explained to John Lindley that Joe "did some inner circle transactions," Gibbons complained that Joe didn't work with "us." Gibbons also offered to help John run the business while John was out of town. When one of the participants, David Willis, was arrested, Gibbons and John Lindley discussed their need to talk about loose ends this caused.

After viewing all the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that appellant intended to be part of a combination as alleged in the indictment and that he had knowledge of the combination. Appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.