**Ronald David LUDWIG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–91–176–CR.**

Court of Appeals of Texas,
Waco.

Feb. 16, 1994.

Opinion Denying Rehearing April 6, 1994.

Steven R. Rosen, Richard A. Dawson, Houston, for appellant.

Ronald David Ludwig, pro se.

Joe F. Grubbs, County and Dist. Atty., David Sloan, Asst. County and Dist. Atty., Waxahachie, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

1. Ludwig was represented by two attorneys at    trial and on appeal.

## OPINION

VANCE, Justice.

Ronald David Ludwig was indicted for the capital murder of Joseph and Matthew Trojacek, a father and son who were his brother-in-law and nephew. A jury found him guilty, and when the jury was unable to agree on the answer to either of the special issues submitted at the punishment hearing, the court assessed life in prison. *See* TEX.PENAL CODE ANN. § 12.31 (Vernon Supp.1994); Act of June 14, 1973, 63rd Leg., R.S., ch. 426, art. 3, § 1, 1973 Tex.Gen.Laws 1122, 1125–26, *amended by* Act of May 17, 1991, 72nd Leg., R.S., ch. 838, § 1, 1991 Tex.Gen.Laws 2898, 2900 (current version at TEX.CODE CRIM. PROC.ANN. art. 37.071, § 2(g) (Vernon Supp. 1994)).

Ludwig initially requested self-representation in this appeal, but the trial court, after we abated the appeal for a hearing on his request, found that he did not desire to waive his right to counsel and represent himself. Counsels' brief[1] asserts six points of error. A "supplemental pro se brief" filed by Ludwig adopts points of error one, two, three, four, and six—with additional arguments under each point—and asserts four additional points. We denied the State's motion to strike Ludwig's *pro-se* brief, although we recognize that he has no right to hybrid representation on appeal. *See Farris v. State*, 819 S.W.2d 490, 493 n. 1 (Tex.Crim. App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992). The arguments that he raises under counsels' points and his additional points will be considered in the interest of justice. *See Santana v. State*, 714 S.W.2d 1, 15 (Tex.Crim.App. 1986).

### SUMMARY OF FACTS

Evidence presented by the State shows that on June 14, 1990, Joseph Trojacek ("Joe") and Matthew Trojacek, age five, were killed by buckshot from two shotgun blasts fired through the glass of a rear door of their home (the "Trojacek residence") in Ellis County. Upon learning that Ludwig had made threats against the Trojaceks' lives, the

investigation turned in his direction. Investigators learned that Ludwig had purchased a dark Chevrolet pickup truck three days before the shooting; four witnesses noticed a dark Chevrolet pickup near the Trojacek residence on that evening. The weapon used was a 12–gauge shotgun; Ludwig once owned or possessed similar shotguns. When Ludwig was arrested, officers discovered a "shotgun hickey"—a bruise consistent with the use of a shotgun—on his shoulder. No one, however, saw who fired the fatal shots.

Ludwig's wife, Theresa Trojacek, had filed for divorce. She testified, over his objection, that he had threatened to kill Joe and Matthew during an argument she had with him in Harris County. She made a recording— also admitted into evidence over Ludwig's objection—of a telephone conversation she had with Ludwig in which he denied that he had been watching the Trojacek residence and that he had left a steel post leaning against their van. Mary Catherine Trojacek ("Mrs. Trojacek"), Joe's and Theresa's mother, testified that Ludwig had threatened her family over her husband's estate. Katherine Trojacek ("Kitty"), Joe's widow, testified that Ludwig had frequently driven by their residence, had entered onto their property without permission, and had followed them on at least one occasion.

John O'Neil, an agent of the Bureau of Alcohol, Tobacco and Firearms, testified that shotgun shells found outside the Trojacek residence were fired in the same gun that fired expended shells found in Ludwig's veterinary clinic in Katy and that the gun was manufactured by either Remington or Mossberg.

A former employee of Ludwig testified about a trip from Houston to Ennis that he took in his own truck with Ludwig, ostensibly for Ludwig to see his son, and their return after they drove by Mrs. Trojacek's residence and found no one at home. On the trip Ludwig took binoculars, walkie-talkies, and flashlights. Another former employee testified that Ludwig threatened to kill his in-laws. The employee also said that Ludwig suggested use of a shotgun to obtain revenge against a person who had raped the employee's aunt, so that the employee could claim temporary insanity. Ludwig's business neighbor testified that Ludwig openly admitted friction between himself and his wife's mother and brother.

Other witnesses testified that Ludwig was not at home on the night that the Trojaceks were killed and could not be found afterwards, that he had moved some belongings to his attorney's office in Houston on the same day, and that he had purchased a Remington 12–gauge shotgun in 1975.

Ludwig's only witness at the guilt-innocence stage was Dr. Robert Jordan, a deputy medical examiner for Galveston County, private practitioner, and former assistant medical examiner in Harris County, who testified as a medical expert. Dr. Jordan's testimony was based on the photographs and measurements taken at the Trojacek residence, the offense reports, the autopsy reports, and other facts unique to the case. He testified that he did not believe that the assailant saw Matthew.

## POINTS OF ERROR

The first two points of error attack the court's rulings that allowed Theresa to testify about statements that Ludwig made to her, claiming that his communications with her are privileged under Rule 504(1) of the Rules of Criminal Evidence. The third point involves the court's refusal to charge the jury on the lesser-included offense of murder. Point four asserts that his illegal arrest tainted the evidence of the "shotgun hickey." Point five complains about the admission of hearsay evidence from Ludwig's brother about the mileage on the truck. Point six asks us to find that the evidence is insufficient to sustain the conviction. Ludwig's *pro-se* point seven asserts that the court erred in refusing to admit a letter written by Theresa. His point eight asserts an abuse of discretion by the court in refusing to allow challenges for cause of certain prospective jurors. Point nine complains of the court's refusal to grant his demand for a timely shuffle of the venire. Finally, in point ten he asserts that he was provided ineffective assistance of counsel.

CONFIDENTIAL COMMUNICATIONS

At an earlier trial,[2] the court conducted a hearing out of the presence of the jury to determine whether certain private conversations between Ludwig and Theresa were privileged under Rule 504 of the Rules of Criminal Evidence. Having determined that the conversations were not privileged, the court ruled that they were admissible—a ruling that the court adopted for the present trial.

Rule 504 of the Rules of Criminal Evidence provides, in pertinent part:

**(1) Confidential Communications Privilege**

(a) *Definition.* A communication is confidential if it is made privately by any person to his spouse and it is not intended for disclosure to any other person.

(b) *General Rule of Privilege.* A person ... has a privilege during their marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to his spouse while they were married.

(c) *Who May Claim the Privilege.* The privilege may be claimed by the person or his guardian or representative, or by the spouse on his behalf. The authority of the spouse to do so is presumed.

(d) *Exceptions.* There is no privilege under this rule:

(1) Furtherance of Crime or Fraud. If the communication was made, in whole or in part, to enable or aid anyone to commit or plan to commit a crime or fraud.

(2) In a proceeding in which an accused is charged with a crime against the person of any minor child or any member of the household of either spouse, except in a proceeding where the accused is charged with a crime committed during the marriage against the spouse.

TEX.R.CRIM.EVID. 504(1)(a), (b), (c), (d).

On March 20, 1990, Theresa and Ludwig went together to property they had pur-

chased in Waller County. While there, they had a heated argument about her family's property in Ellis County. Theresa testified: "He said—he told me that I didn't know how easy it would be for him to be behind—I think he said the big green farm tractor or a round hay baler or the metal barn down below Joe's barn, and when he came by he'll just blow [Joe's] brains out." Further, she testified that Ludwig said, "[A]nd I may just have to take Matt out, too." When asked by the prosecutor whether Ludwig was specific about how he would "take [Joe] out," Theresa replied, "He said he would have a shotgun."

On April 18, 1990, after Theresa had moved to Ennis, she recorded a telephone conversation with Ludwig in which he denied watching the Trojacek family or putting a "steel post up against [Kitty's] van door so that she would know that somebody was there."

Ludwig asserts in points one and two that these communications are confidential under Rule 504(1)(a) because they were made in private to his spouse and not intended for disclosure. *See id.* 504(1)(a). Thus, he argues that Rule 504(1)(b) and (c) allow him to prevent their disclosure. *See id.* 504(1)(b), (c). The State relies on (1) the exception created in Rule 504(d)(2) that allows testimony about spousal conversations if the "accused is charged with a crime against the person of any minor child or any member of the household of either spouse," (2) the exception created in Rule 504(1)(d)(1) that allows testimony about spousal conversations if "made, in whole or in part, to enable or aid anyone to commit or plan to commit a crime or fraud," and (3) assertions that the conversations were never intended to be confidential. *See id.* 504(1)(a), (1)(d)(1), (1)(d)(2). With respect to the April 18 recorded statement, the State further asserts that it was voluntarily disclosed to a third party and was not made during the marriage relationship. We will, for this discussion, assume that all statements were made during their marriage, that Ludwig did not intend for Theresa to disclose the communications, and that the

2. An earlier trial on the same offense resulted in a mistrial when the jury could not agree on a verdict.

April 18 statement was not disclosed to any third party.

The dispute about the State's first contention centers around whether the phrase "of either spouse" in Rule 504(1)(d)(2) modifies the phrase "of any minor child." If so, Ludwig's statements would be privileged in this proceeding because Matthew was not his and Theresa's child. Neither party has directed our attention to a case on point, and our research reveals none.

In support of its position, the State points out that the predecessor of Rule 504 is the now-repealed article 38.11 of the Code of Criminal Procedure, which read in pertinent part:

Neither husband nor wife shall, in any case, testify as to communications made by one to the other while married.... However, a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or *against any child of either* under 16 years of age....

Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 2, 1973 Tex.Gen.Laws 968, 972–3, *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 9, 1985 Tex.Gen.Laws 2472, 2474 (emphasis added). Thus, it argues that the elimination of the words "of either" and the re-wording of Rule 504 changed the way the confidential communication privilege works.

We turn to the commentators on our rules of evidence. In one, we find:

It is not clear whether the drafters intended to limit this exception to any minor child of either spouse. That limitation did appear in Article 38.11, but, under the new rule, it is possible to argue that the phrase "of either spouse" pertains only to "members of the household" and not to "the person of any minor child." Although it would not be unreasonable to read this exception broadly enough to cover crimes against any minor child, it is just as reasonable to conclude that both the "minor" exception and the "member of the household" exception are limited by the language "of either spouse." Under either reading, this exception clearly recognizes greater public awareness and concern for

crimes against children and crimes within the household. A balancing test would suggest that the need for disclosure is greater than protecting otherwise confidential marital communications.

Hulen D. Wendorf, David A. Schlueter & Robert R. Barton, Texas Rules of Evidence Manual, 3rd Ed. Rule 504 (1991). In another, we find: "[A]nother important change effected by the exception is that the minor child need not be a child of either spouse or even a member of either spouse's household." 1 Steven Goode, Olin G. Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal, 2nd Ed. § 504.8 (Texas Practice 1993). In support of their position, the authors state that the words "of either spouse" were included in the rule as recommended by the Subcommittee on Criminal Matters of the Senate–House Select Committee on the Judiciary to the Select Committee on Rules of Evidence in Criminal Cases in 1985 and were thereafter deleted. *Id.* § 504.8 n. 11. The commentators continue:

The provision reflects a perception of two, perhaps related, social phenomena. First, it expresses concern over the perceived increase in assaults, both sexual and violent, against children and the aged. Second, it reflects the increased frequency with which children who are unrelated to either spouse may be placed in the home for short periods, as with day or foster care, and the increase in the number of elderly persons and their presence as part of others' households. The new provision's obvious intent is to require spousal testimony in any prosecution for a crime against the person of a minor child, *whether or not a member of either spouse's household,* or against the person of a household member of either spouse.

*Id.* § 504.8 (emphasis added).

Ludwig cites *Nelson v. State,* 612 S.W.2d 605 (Tex.Crim.App.1981), and *Garcia v. State,* 573 S.W.2d 12 (Tex.Crim.App.1978), in support of his position. Both, however, were decided before the adoption of the Rules of Criminal Evidence and involved interpretations of Article 38.11. Neither is particularly helpful in our analysis.

Ludwig's *pro-se* brief states that *Johnson v. State,* 803 S.W.2d 272 (Tex.Crim.App.

1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), "upholds every aspect and nuance of this privilege."[3] However, *Johnson* holds that the state may not ordinarily call a spouse to testify when it knows that the spouse will invoke the marital privilege and that the state should not be permitted to cross-examine a spouse on irrelevant matters at a suppression hearing. *Id.* at 281–83.

That all three branches of government are increasingly concerned about sexual and violent assaults against children is beyond question. We understand the exception contained in Rule 504(1)(d)(2) to expand the number of cases involving crimes against children in which an accused will not be permitted to invoke a marital privilege and prevent the jury from hearing otherwise relevant testimony. *See* TEX.R.CRIM.EVID. 504(1)(d)(2). Thus, assuming for Ludwig's benefit that these statements to Theresa were made during their marriage, were intended to be confidential, and were not disclosed to any third party, we hold that the State was entitled to the benefit of the exception stated in Rule 504(1)(d)(2) because Ludwig was being tried for an offense against Matthew Trojacek, a minor child. *See id.* Because the court properly admitted Theresa's testimony about the statements, we overrule points one and two.

Having overruled the points, we do not reach the State's contention that the exception for statements in furtherance of crime or fraud also applies. *See id.* 504(1)(d)(1). The judgment is affirmed. The remainder of the opinion is ordered not published. *See* TEX. R.APP.P. 90.

## OPINION DENYING REHEARING

Appellant was convicted of capital murder on August 3, 1991, and the jury assessed his punishment at imprisonment for life. We affirmed the conviction by written opinion on February 16, 1994.

On February 22, Appellant filed a *pro-se* motion for an extension of time to file a motion for rehearing, which we denied because he is represented by counsel. While the motion for extension of time was pending, appellant filed a timely *pro-se* motion for rehearing. We did not act on that motion because time remained for Appellant's counsel to file a motion for rehearing. Counsel have, however, filed nothing further.

We will review Appellant's *pro-se* motion for rehearing in the interest of justice.

Appellant's motion for rehearing assails our denial of his claim of privilege under Rule 504(1) of the Rules of Criminal Evidence as to statements made by him to Theresa Trojacek, his wife. *See* TEX.R.CRIM. EVID. 504(1). We determined that the phrase "of either spouse" in Rule 504(1)(d)(2) does not modify the term "any minor child." *See id.* 504(1)(d)(2). Thus, because Appellant was being tried for a crime against the person of a minor child—Matthew Trojacek, age five—the exception denies him the right to claim the privilege concerning confidential communications made to his wife. *See id.* 504(1).

Appellant asserts that our decision is contrary to the Court of Criminal Appeals' decision in *Johnson v. State,* 803 S.W.2d 272 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). We considered the *Johnson* opinion on original submission and, finding that the relevant part of that opinion only interpreted the provisions of Rule 504(2) relating to the spousal privilege not to be called as a witness rather than giving any interpretation to exceptions contained in Rule 504, rejected it as part of our analysis. *See id.;* TEX.R.CRIM. EVID. 504(1), (2). Although Appellant is correct that the language of the pertinent exception of Rule 504(1) is identical to an exception in 504(2), the *Johnson* opinion simply does

---

**3.** He also cites to *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980),

decided under Rule 501 of the Federal Rules of Evidence.

not discuss either part of the Rule. Instead, the Court discussed the privilege that a spouse has not to be called as a witness—noting that the absolute disqualification of the former article 38.11 has been removed and replaced with a privilege—and held that error occurred, although harmless, when the State called the defendant's spouse as a witness in front of the jury while knowing that she would claim her privilege not to testify.[1] *See Johnson,* 803 S.W.2d at 283.

Next, Appellant cites three cases from the courts of appeals. *Riley v. State* focuses on the meaning of the phrase "member of the household" in Rule 504(2)(b).[2] *Riley v. State,* 849 S.W.2d 901, 903 (Tex.App.—Austin 1993, pet. ref'd). *Gibbons v. State* and *Fuentes v. State* discuss only the spousal privilege of Rule 504(2). *Gibbons v. State,* 794 S.W.2d 887, 892 (Tex.App.—Tyler 1990, no pet.); *Fuentes v. State,* 775 S.W.2d 64, 65–66 (Tex. App.—Houston [1st Dist.] 1989, no pet.). Rule 504(2)(a) specifically grants a spouse the right to testify for the State, *i.e.,* the privilege not to testify belongs to the spouse and can be waived by him or her "even over objection by the accused." TEX.R.CRIM.EVID. 504(2)(a). The privilege granted by Rule 504(1) not to disclose or to prevent another from disclosing a particular confidential statement made to one's spouse belongs to the person making the statement. *Id.* 504(1)(a), (b), (c). Each part of the Rule contains an exception from the general rule of privilege "in a proceeding in which an accused is charged with a crime against the person of any minor child or any member of the household of either spouse." *Id.* 504(1)(d)(2), 504(2)(b). We interpreted only the "any minor child" provision of Rule 504(1)(d)(2), a phrase not interpreted in any case cited by Appellant.

Appellant cites a fourth case as "*Cochran v. State,* 844 S.W.2d 494 (1991)." No such case exists in Volume 844, and even by resorting to searches of electronic databases,

we have been unable to find a case similar to the factual summary given by Appellant.

Finally, Appellant makes arguments about the policy reasons behind the exceptions contained in Rule 504 and arguments about its legislative history and purpose. We remain satisfied that our original analysis is correct.

Finding Appellant's motion for rehearing without merit, we deny it.

---

1. *Johnson* was overruled by *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991), to the extent that it held that article I, section 9 of the Texas Constitution conferred no more protection than the corresponding provision of the U.S. Constitution.

2. In fact, the *Riley* opinion tends to support our analysis when it discussed the purpose of the exceptions as preventing "assaults against *children,* the aged, and any other household member, whether or not related to either spouse." *See Riley v. State,* 849 S.W.2d 901, 903 (Tex.App.—Austin 1993, pet. ref'd) (emphasis added).