# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00523-CR

**Brandon Lee Hammock, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 59542, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brandon Lee Hammock appeals from his conviction for capital murder. *See* Tex. Penal Code Ann. § 19.039(a)(2) (West Supp. 2006). After the jury found him guilty, sentence was automatically imposed at life imprisonment in the Texas Department of Criminal Justice-Institutional Division. *See id.*; Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West 2006). In two issues on appeal, appellant contends that the trial court abused its discretion in denying his motion to sever his trial from that of his codefendants and that the evidence was insufficient because an accomplice witness's testimony was not adequately corroborated.[1] We affirm the trial court's judgment.

---

[1] Codefendant Russell J. Alligood also filed a motion to sever, which was denied. Alligood's appeal is before us as cause number 03-06-00516-CR, also decided this day. *Alligood v. State*, 03-06-516-CR (Tex. App.—Austin July 12, 2007, no pet. h.) (mem. op., not designated for publication). Another companion case involving codefendant Erik Siperko is pending in the Thirteenth Court of Appeals.

**Background**

In June 2005, Captain John Thresher went to check on his friend Captain Jason Gonzalez, who had not reported for work at Fort Hood that day. When Thresher arrived at Gonzalez's house in Harker Heights, he noticed that Gonzalez's pickup was gone. He looked through the glass front-door window and could see a back door standing open. When he got to the back door, he noticed muddy footprints leading into the house. He went into the house, discovered Gonzalez's dead body in the kitchen and saw a bullet hole in the window. The cause of death was later determined to be four small-caliber bullet wounds to the head. Four .22-caliber shell casings were recovered from the crime scene. Among the items missing from the house were Gonzalez's military identification that had his social security number printed on it, various electronic equipment, tools, the pickup, and a flight helmet with Gonzalez's name on it.

Two of the perpetrators, Eric Siperko and Russell Alligood, were identified through video surveillance tapes in a convenience store in Killeen as they attempted to use Gonzalez's identification to cash stolen checks. Eventually, the other two perpetrators, appellant and Matthew Harris, were identified and gave written statements admitting participation in the crime. Investigators learned that Alligood had purchased the gun, which was later discovered under the mattress in appellant's bedroom.[2] In the shed outside appellant's home, the officers found Gonzalez's tools and flight helmet. Appellant's fingerprint was found on the flight helmet and Alligood's fingerprint was found inside a box of .22 ammunition found in appellant's home.

---

[2] Appellant was a juvenile later certified for trial as an adult. *See* Tex. Fam. Code Ann. § 54.02 (West 2002). Appellant's father consented to the search.

2

Ballistics testing confirmed that the shell casings found at the crime scene had been fired by the gun recovered from appellant's home.

Appellant, Siperko, and Alligood were tried jointly. At trial, the confessions of Siperko, Alligood and appellant were admitted in evidence in a redacted form, eliminating all references to the codefendants. Each admitted taking part in the crime, but denied being the one who pulled the trigger. The fourth indicted conspirator, Matthew Harris, testified as an accomplice witness for the State.[3] He told the jury that in May or June of 2005, he and the other three got together and started committing car burglaries. About three days before the murder, Harris said that Alligood mentioned doing some "kick doors," that is, home invasion robberies. Appellant said that they needed to be armed in case they ran into resistance. Harris, appellant, and Alligood went to a pawn shop to buy a pistol. Alligood purchased the gun, as he was the only one old enough to do so. Alligood later showed appellant how to load and use the gun; Harris wiped it off after handling it, because he had learned about fingerprints from television. On the night of the murder, all four of them met at 11:30 p.m. They dressed in dark clothing, wore gloves, and had something to cover their faces. They burglarized several vehicles and took check books.

When they returned to their car, the subject of doing a "kick door" came up again. They checked to see if they had everything they needed. Appellant displayed the gun. Alligood had a utility knife and handcuffs. Harris and Siperko had zip ties to restrain anyone who might be at home. After driving around and rejecting two or three houses, they settled on Gonzalez's. They

---

[3] At the time of trial, Harris was indicted for the same crimes and was in jail awaiting trial. He did not have a plea bargain agreement but said that he testified against the other three so he could "get this off my chest and also hopefully it might help me in the long run."

3

walked around the house looking for a security system; Alligood cut all of the wires to the house. Appellant pointed out that he could see someone asleep in the bedroom but they decided to go ahead. Siperko and appellant were to go directly to the bedroom and subdue Gonzalez.

Harris and Alligood went to the back door and kicked it in. Harris saw Siperko and appellant go toward the bedroom. As he and Alligood entered, he heard someone yelling "get down" and then heard a shot. Harris ducked down and saw Siperko running by him with appellant following. Appellant then stopped, pointed the gun through the window, and fired. Harris could hear groaning; appellant fired twice more.

The group then finished the robbery and took the stolen property to Harris's residence to unload. They began writing out the checks they had taken in the car thefts. Alligood and Harris returned to Gonzalez's residence and took the pickup and additional items. After unloading, they decided to get rid of the truck and drove it into Stillhouse Hollow Lake. They then tried to cash the checks but were unsuccessful because the checks were over the amount allowable at the check cashing station at the convenience store. This check-cashing attempt eventually resulted in their apprehension because one of the persons from whose car the check was stolen detected the attempt to pass the check and reported it to his bank. Ultimately, the check-cashing location was identified as the 7-11 store, the surveillance tapes viewed, and the defendants identified.

At trial, the court's instructions to the jury included the law of parties. The court also instructed the jury that it was not to consider the redacted confessions of the respective co-defendants against anyone other than the defendant who had signed that confession. The jury found appellant and the two other defendants guilty of the offense of capital murder and the sentence was

4

automatically imposed at life in the Texas Department of Criminal Justice Institutional Division. In two issues on appeal, appellant contends that the trial court abused its discretion in denying appellant's motion to sever his trial from that of Alligood and Siperko, and that Harris's accomplice witness testimony lacked sufficient corroboration.

## Discussion

### *Severance*

As a preliminary matter, the State notes that the motion to sever does not appear in the clerk's record and the State has been unable to locate a copy. However, there was a hearing on the motion to sever and the reporter's record is part of the record in the case. At the hearing on the motion, appellant contended that the possibility of antagonistic defenses existed and that he would be compelled to defend against the codefendants as well as against the State.

Two or more defendants may, at the discretion of the court, be tried jointly for any offense growing out of the same transaction unless, upon timely motion to sever, it is shown either that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant. Tex. Code Crim. Proc. Ann. art 36.09 (West 2006). Appellant argues only the second ground, contending that he and his codefendants had antagonistic defenses.

The court of criminal appeals held in *Qualley v. State* that the existence of antagonistic defenses was not by itself a sufficient ground for severance. 206 S.W.3d 624, 636 (Tex. Crim. App. 2006) (citing *Zafiro v. United States*, 506 U.S. 534 (1993); abandoning contrary language in *Goode v. State*, 740 S.W.2d 453 (Tex. Crim. App. 1987)). The court noted that the commentary to article 36.09 of the code of criminal procedure suggested that the legislature intended

5

for defendants accused of the same offense to be tried together most of the time. *Id*. at 631-32. After noting that "prejudicial" was undefined and somewhat ambiguous, the court later said that it could not mean the types of "circumstances or disagreements between parties that would normally be expected to pop up during any trial containing multiple defendants." *Id*. The court concluded that the correct standard to establish prejudice was that "the defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction." *Id*. at 636.

Mere proof of differing degrees of culpability will not support a severance; the codefendants' positions must be mutually exclusive so that if the jury believes one, it must necessarily disbelieve the other. *Davila v. State*, 4 S.W.3d 844, 847 (Tex. App.—Eastland 1999, pet. ref'd); *Gibbons v. State*, 794 S.W.2d 887, 891 (Tex. App.—Tyler 1990, no pet.). To establish inconsistent or antagonistic defenses, the defendant must show, by offer of proof or otherwise, what the defense would be if the defendant were not being tried with the codefendant. *Davila*, 4 S.W.3d at 847. The defendant has the heavy burden of showing clear prejudice from the denial of a severance. *Gibbons*, 794 S.W.2d at 891.

Appellant complains that his "desire to show the jury that he was guilty of robbery only and not of the murder that resulted" was complicated by the efforts of his co-defendants to mitigate and minimize their culpability in the murder. He claims that he was unable to show his lack of intent to shoot because of the joint trial. However, under the facts of the case, whether he actually shot or intended to shoot Gonzalez was not the controlling issue.

6

The court charged the jury on the law of parties, instructing the jury that if in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the co-conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in the furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out of the conspiracy.[4]

The evidence showed that all four defendants participated in a conspiracy to commit several car burglaries that then escalated into a plan to do a "kick door." They discussed the need to obtain a gun in case someone was home and resisted; Alligood purchased a gun. All four carefully prepared. They continued with the robbery plan despite noticing Gonzalez asleep in a bedroom. Appellant and Siperko went into Gonzalez's bedroom to subdue him; he resisted, and was shot. All four continued to loot the home and two of them even returned to take more property and Gonzalez's pickup truck. They attempted to cash stolen checks using identification stolen from Gonzalez. The proceeds of the robbery were to be split among them.

All of the defendants were involved in committing the robbery. If a group of people buys a gun to take along in case of resistance while breaking in, using the gun to shoot a person in the house is an offense that should have been anticipated. All four knew that appellant had the gun with him when they went into the house. All four knew the house was occupied at that moment. Under the charge as applied to the facts, all four were culpable regardless of who the "triggerman" was. In any event, appellant's counsel argued lack of intent and differing culpable mental states

---

[4] *See* Tex. Penal Code Ann. § 7.02(b) (West 2003).

7

extensively, so appellant could not have been deprived of any specific right to try to demonstrate a lack of his specific intent.

Appellant has not shown an abuse of discretion in the trial court's overruling of his motion to sever as he has not shown "prejudice." *See Qualley*, 206 S.W.3d at 636. Accordingly, we overrule appellant's first point of error.

### *Accomplice Witness*

In his second point of error, appellant contends that the accomplice witness testimony was not sufficiently corroborated and therefore his conviction cannot stand. A conviction cannot stand on accomplice testimony without corroborative evidence tending to connect the defendant with the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). The corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). It need only tend to connect the defendant to the offense. *Id*. All that is necessary is that the combined weight of the non-accomplice testimony tends to connect the defendant to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). In order to determine whether an accomplice's testimony is corroborated, the accomplice testimony must be eliminated, and the remaining evidence reviewed, to determine whether it tends to connect the defendant to the offense. *Knox v. State*, 934 S.W.2d 678, 686 (Tex. Crim. App. 1996). Corroborative evidence must be viewed in the light most favorable to the verdict. *Id.* at 687.

There is no precise rule about the amount of corroborative evidence required; each case must be considered on its own facts and circumstances. *Gill v. State*, 873 S.W.2d 45, 48

8

(Tex. App. 1994); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.). Accomplice testimony need not be corroborated as to every element of the offense. *Brosky v. State*, 915 S.W.2d 120, 138 (Tex. App.—Fort Worth 1996, no pet.).

Harris was an accomplice witness as a matter of law. The jury was instructed that Harris was an accomplice witness and charged on the corroboration requirement. The court specifically instructed the jury that it could not consider the redacted confessions as corroborative evidence "in any way to connect the defendant to the commission of the offense." Appellant contends that his own redacted confession cannot be considered corroborative because it is inconsistent with Harris's testimony that named appellant as the one who pulled the trigger. Appellant said the shot was fired by someone else. However, the corroboration needed is whether evidence other than Harris's testimony tends to connect appellant to the offense, rather than whether there are any inconsistencies with other evidence.

In appellant's confession, he admits going to Gonzalez's house and the basic facts as developed at trial. He contends someone else went into the bedroom and fired the shot. He admitted driving the pickup into the lake and said that everything they took was left at Harris's house. There is also other evidence tying appellant to the offense. A .22-caliber handgun was found under appellant's mattress with a serial number matching the gun purchased by Alligood. Ballistics tests confirmed it was the gun used in the offense. Some property taken from Gonzalez's house was found in appellant's storage shed, including the helmet with Gonzalez's name on it. Appellant's fingerprint was found on the helmet. Possession of the fruits of a crime by the accused

tends to connect him to the commission of it. *See Lyman v. State*, 540 S.W.2d 711, 714 (Tex. Crim. App. 1976).

Karen Trejo, Harris's roommate and former girlfriend, testified that on the day before the murder, appellant showed the gun to her. The four conspirators picked her up from work about 3 or 3:30 a.m., after burglarizing the cars but before the murder, took her home, then left. Later, between the time she arrived at home and 4:00 a.m., she went outside to smoke and found that they had returned with a white pickup truck. She saw a black duffle bag that had not been at the residence before but did not look inside it. She placed appellant and his co-defendants together on the afternoon before the murder, buying a gun, and placed them together a short time before and after the murder. Her testimony also tends to connect appellant to the commission of the offense. *See Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984) (holding proof accused was at or near scene of crime about time of commission, coupled with other suspicious circumstances, may be sufficient corroboration).

Multiple factors tend to connect appellant to the offense independently of the accomplice's testimony: several pieces of physical evidence, appellant's own statement, and the testimony of another witness. The evidence was thus sufficient to corroborate the accomplice witness's testimony and the court did not err in considering it. We overrule appellant's second point of error.

## Conclusion

We have overruled both of appellant's points of error. We affirm the trial court's judgment.

10

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: July 11, 2007

Do Not Publish

11