Antonio SILVA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–95–00062–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 16, 1996.

James William Blagg, Steven P. Redgate, Sr., San Antonio, for appellant.

Jose M. Rubio, Jr., Webb County District Attorney, Tito H. Alfaro, Assistant District Attorney, Laredo, for appellee.

Before CHAPA, C.J., and STONE and GREEN, JJ.

## OPINION

CHAPA, Chief Justice.

This is an appeal from a conviction for aggravated robbery. The appellant was tried along with a codefendant on charges of aggravated robbery and murder. After returning a verdict of not guilty on the charge of murder, the jury found both appellant and his codefendant guilty of aggravated robbery. Appellant was sentenced to 50 years confinement. Appellant complains on appeal that the evidence is insufficient to support his conviction and that the trial court erred in refusing to grant his motions for severance. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 1994, at approximately 6:00 p.m., Juanita Flores heard a gunshot. Shortly thereafter, she responded to an alarm from the store that she and her husband owned and operated in Laredo, Texas. Mrs. Flores entered the store and found her husband wounded on the floor. He died a short time later. The official cause of death was a gunshot wound to the chest.

During an investigation of the crime scene, the police discovered both a .25 caliber casing and a .25 caliber bullet. No latent finger prints were discovered on either piece of evidence. No gun was ever recovered. The investigation further revealed that the cash drawer was out of place and that some money was missing.

At trial, the State's witness, Graciela Gonzalez, testified that at 5:50 p.m. on June 1, 1994, she left a friend's house and was enroute to Laredo Community College. At approximately 6:00 p.m., she arrived at the intersection on which the victim's store was located. Ms. Gonzalez began a left hand turn and almost struck two males walking hurriedly across the street, towards the victim's store. She made eye contact with one of the men for approximately 15 seconds. Ms. Gonzalez testified that she watched the two males in her rear-view mirror and then turned around and saw them standing at the store entrance. She further testified that

the two males looked around nervously as they entered the store.

After hearing a news report regarding the shooting, Ms. Gonzalez contacted police, gave a statement, and described to a police artist the one male she had made eye contact with. Two days later, Ms. Gonzalez was shown a photographic line up of 6 males. She identified appellant from the array as the individual she made eye contact with on June 1. Based on Gonzalez's identification, appellant was arrested.

At trial, appellant's codefendant, Ronald Lemos, testified in his own behalf. He testified that on the evening in question he left a friend's house and was approximately two blocks from the victim's store when he ran into appellant and they began talking and walking together. Lemos testified that when they arrived at the victim's store, appellant entered the store and told Lemos to wait. Sometime thereafter, Lemos started to enter the store, but he stopped when he heard the gunshot and saw appellant pointing a gun at the victim.

Seconds later, appellant left the store. Appellant pointed the pistol at Lemos and told Lemos that if he told anyone what happened, appellant would kill him and his family. Lemos then returned to his friend's home. Lemos testified that he informed his friend, Luna, that, "he gave him a slug," implying that someone other then Lemos pulled the trigger, but not mentioning appellant by name. Lemos also testified that he informed another friend, Villanueva, that "they killed an old man." Conversely, Luna and Villanueva testified that Lemos told them that he (Lemos) had killed someone.

After interviewing Luna during the course of the investigation, the police approached Lemos at his home and asked him to accompany them to the police station to be interviewed in connection with the criminal investigation. After several hours of questioning Lemos was placed under arrest. He then signed a written confession in which he confessed to shooting Benjamin Flores. At no time did Lemos state that appellant or any other person was involved.

Appellant and Lemos were both indicted for the offenses of murder and aggravated robbery. The jury found both appellant and Lemos guilty of aggravated robbery and returned not guilty verdicts on the charge of murder.

## ARGUMENTS ON APPEAL

### A. Sufficiency of the Evidence

In his first and second points of error, appellant contends that the evidence presented at trial is insufficient to support his conviction. In point of error two, appellant contends that because Lemos was an accomplice who testified at trial but was not called by appellant, the "accomplice witness rule" should apply. Appellant contends that Lemos's testimony, in order to furnish the basis for the conviction, must be corroborated by other evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Appellant argues that the "other evidence" in this case is insufficient to corroborate the testimony of Lemos, and therefore, is insufficient to sustain the jury's verdict. In his first point of error, appellant argues that, even with Lemos's testimony, the evidence is insufficient to support the jury's verdict.

The accomplice witness rule, as codified in Article 38.14, states that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. . . ." TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). However, ". . . accomplice-witness testimony must be corroborated and the jury so instructed only when the State calls the witness and seeks to rely on such witness' testimony." *Selman v. State*, 807 S.W.2d 310, 311 (Tex. Crim.App.1991). In the present case, although Lemos was an accomplice as a matter of law, the State did not call Lemos as a witness. He testified in his own behalf. As such, Lemos's testimony is exempt from the accomplice witness rule, and there was no need for his testimony to be corroborated. *See id.*

In reviewing the legal sufficiency of the evidence, we must view all the evidence admitted, whether proper or improper, in the

light most favorable to the jury's verdict and determine whether a rational trier of facts could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Deason v. State*, 786 S.W.2d 711, 713 (Tex.Crim. App.1990). The jury is the sole trier of fact, and it may judge the credibility of the witnesses, reconcile conflicts in the testimony, and accept or reject any or all of the evidence on either side. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

■ In order to obtain a conviction for aggravated robbery, the State must prove, beyond a reasonable doubt, the following six elements: 1) A person, 2) in the course of committing theft, 3) with intent to obtain or maintain control of the property, 4) intentionally, knowingly, or recklessly, 5) causes bodily injury to another or threatens or places another in fear of imminent bodily injury or death, and 6) uses or exhibits a deadly weapon. *Robinson v. State*, 596 S.W.2d 130, 132 (Tex.Crim.App.1980); TEX. PENAL CODE ANN. § 29.03 (Vernon 1994).

■ Although appellant maintained that he was not present when the crime took place, the testimony of both Gonzalez and Lemos places him at the scene of the crime. Mrs. Flores's testimony indicates that money was missing from the cash draw. The testimony of the investigating police officers establishes that there were signs of a struggle at the store and that the cash draw was out of place. Lemos's testimony supports a finding that appellant threatened or placed the victim in fear of imminent bodily injury or death and that a firearm was used. The coroner's report also supports a finding that a firearm was used.

After reviewing this evidence in a light most favorable to the jury's verdict, we conclude that a reasonable jury would be justified in concluding that appellant committed aggravated robbery. As such, the evidence is sufficient to support appellant's conviction. Appellant's first and second points of error are overruled.

**B. Severance**

In his third point of error, appellant argues that the trial court abused its discretion by failing to grant his motions for severance pursuant to TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981). Appellant asserts that, because of inconsistencies in his defense and that of Lemos, a joint trial was prejudicial to him. Because of this prejudice, appellant made a pre-trial motion for severance and several similar motions during trial, all of which were denied.

In support of his allegations of prejudice, appellant refers to his use of an alibi as a defense during trial. At trial, appellant contended that he was not at the crime scene when the robbery occurred and that the State's witness misidentified him as one of the men entering the store. Conversely, Lemos admitted that both he and appellant were present when the robbery took place, but identified appellant as the triggerman. As further support for his claim of prejudice, appellant alleges that he was prevented from using Lemos's oral statement as impeachment evidence against him because the trial court granted Lemos's motion to suppress the statement prior to trial. Had the two defendants been tried separately, appellant would have been able to use Lemos's oral statement as a prior inconsistent statement in order to weaken Lemos's allegation that appellant was the triggerman.

■ Motions for severance must be made prior to the announcement of ready in order to be considered timely. *Foster v. State*, 652 S.W.2d 474, 477 (Tex.App.—Houston [1st Dist.] 1983), *affirmed*, 693 S.W.2d 412 (Tex.Crim.App.1985). Failure of the trial court to grant an untimely motion to sever is not error. *See Etter v. State*, 679 S.W.2d 511, 515 (Tex.Crim.App.1984). Therefore, the trial court did not err in denying the motions to sever made by appellant after trial began.

■ However, as to appellant's pre-trial motion to sever, Article 36.09 mandates severance where a prior criminal conviction of one codefendant is admissible or where a joint trial would, as a matter of law, prejudice a codefendant; otherwise, the granting

of a severance is within the sound discretion of the trial court. *Garza v. State*, 622 S.W.2d 85, 91 (Tex.Crim.App.1980); *Robertson v. State*, 632 S.W.2d 805, 808 (Tex.App.—Houston [14th Dist.] 1982, no pet.). No abuse of discretion will be found where the movant has failed to satisfy the heavy burden of showing clear prejudice. *Loveless v. State*, 800 S.W.2d 940, 945 (Tex.App.—Texarkana 1990, pet. ref'd); *see Alvarado v. State*, 818 S.W.2d 100, 102 (Tex.App.—San Antonio 1991, no pet.). If the motion to sever is not supported by evidence, its denial is not an abuse of discretion. *Ransonette v. State*, 550 S.W.2d 36, 41 (Tex.Crim.App.1976).

Appellant submitted a timely motion for severance on the grounds that the inconsistent defenses alleged by him and his codefendant would create prejudice to his case. At the hearing on appellant's motion, appellant's attorney advised the court that his defensive theory would revolve around an alibi and that he would be arguing that appellant was not at the scene when the crime took place. Jose Luis Ramos, Lemos' attorney, was placed under oath and stated to the court that, "[t]he defense will be antagonistic in that I expect my client Lemos to take the stand and I expect him to testify that [appellant] was in fact the aggressor and the one with that gun and was in fact there." In regard to the inconsistent defenses, Ramos went on to say that, "[t]hat is about as antagonistic as you're going to get you know and that is as prejudicial as you're going to get."

An accused cannot rely upon a general allegation in his severance motion that a codefendant has a conflicting or inconsistent defense, he must apprise the trial court of exactly what the inconsistent defenses will be. *See Calverley v. State*, 511 S.W.2d 60, 62 (Tex.Crim.App.1974), *overruled on other grounds*, *Moosavi v. State*, 711 S.W.2d 53, 55 (Tex.Crim.App.1986); *Robertson v. State*, 632 S.W.2d at 807–08. We find that appellant has met this burden. The statements of both attorneys at the severance hearing were sufficient to demonstrate that prejudice would result if appellant and Lemos were tried together. In fact, the subsequent proceedings proved to mirror Ramos' prediction. That is, appellant was forced to defend himself not only against the State but against his codefendant as well. His defense was further hindered by the fact that he was not permitted to introduce significant impeachment evidence as a result of the joint trial.

Proof that would demonstrate differing degrees of culpability among defendants is not enough to warrant separate trials. *See Mahavier v. State*, 644 S.W.2d 129, 133 (Tex.App.—San Antonio 1982, no pet.). Instead, the codefendants' positions must be "mutually exclusive" in the sense that "the jury in order to believe the core of one defense must necessarily disbelieve the core of the other." *Goode v. State*, 740 S.W.2d 453, 455 n. 2 (Tex.Crim.App.1987) (quoting *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir.1984) and *DeGrate v. State*, 518 S.W.2d 821, 822 (Tex.Crim.App.1975)). In the present case, if the jury were to believe Lemos's contention that appellant was the triggerman, it would necessarily have to disbelieve appellant's assertion that he was not present when the crime took place. As such, we find that the joint trial resulted in clear prejudice to appellant's defense. Having evidence of such potential prejudice before it, the trial court abused its discretion in denying appellant's motion for severance. Appellant's third point of error is sustained.

Because we have sustained appellant's third point of error, it is not necessary for us to address appellant's remaining point of error. The judgment of the trial court is reversed and the case is remanded for a new trial consistent with this opinion.