No. 04-00-00521-CR



Pioquinto MENDOZA, III,


Appellant



v.



The STATE of Texas,


Appellee



From the 49th Judicial District Court, Webb County, Texas


Trial Court No. 99-CRN3-0088-DI


Honorable Manuel Flores, Judge Presiding (1)



Opinion by: Alma L. López, Justice


Sitting: Tom Rickhoff, Justice

 Alma L. López, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: July 25, 2001


AFFIRMED

 Appellant, Mendoza, and co-defendant, Jorge Aguillon, were indicted on August 17, 1999
for the offense of murder. Mendoza signed a written confession to the murder. The trial court heard
evidence on his motion to suppress and denied the motion, allowing it to be used at trial. One week
prior to trial, on July 6, 2000, Mendoza filed a motion to sever his trial from that of his co-defendant.
The motion was heard and denied. At the trial, the jury acquitted Aguillon and convicted Mendoza
of murder. Mendoza received a 30-year sentence. He raises two issues on appeal concerning the
denial of severance and denial of proposed jury instructions.

Background

 Relvy Ramon Martinez died of multiple gunshot wounds on or about June 22, 1999. On June
24, 1999, a fourteen-year-old juvenile, Joe Martinez, reported the murder to an investigator at the
Webb County District Attorney's Office. Based on this information, investigators went to a brushy
area behind the Laredo Country Club and located the body and the deceased's car. Joe implicated
Mendoza and the co-defendant Aguillon. After obtaining arrest and search warrants, the investigators
arrested Mendoza at the public library and searched his residence. During a custodial interrogation,
according to Mendoza's trial testimony, the two investigators played "good cop/bad cop" and
Mendoza was threatened with the death penalty unless he confessed. Mendoza gave an oral
statement and signed a written statement confessing to the killing and implicating co-defendant
Aguillon and Joe Martinez. Mendoza also led an investigator to the place where a 22-caliber rifle was
hidden in a field near his residence.

 Mendoza sought a separate trial from Aguillon on the grounds that they would be presenting
antagonistic defenses. At trial, Mendoza's confession was admitted into evidence. Mendoza also
testified at the trial, denied that the confession was true, and stated that the co-defendant, Aguillon,
had dropped Mendoza off at the track and used Mendoza's car to pick up Joe Martinez. Mendoza's
alibi was that he was at the high school track jogging at the time of the killing. His defense also
included several witnesses who testified that they had either seen him at the track or that he had called
them and asked them to join him at the track for a jog. Aguillon did not take the stand. Through other
witnesses, Aguillon presented an alibi defense that he was enrolled in and attending an evening class
which is part of the high school's drop-out recovery program on the evening that the murder
occurred.

Severance


 Mendoza asserts that the court erred in failing to order separate trials for the defendants. With
two exceptions, the trial court has the discretion to try two or more defendants jointly or separately.
Tex. Crim. Proc. Code Ann. art. 36.09 (Vernon 1981); Aguilar v. State, 26 S.W.3d 901, 903 (Tex.
Crim. App. 2000). The exception in 36.09 pertinent to this appeal calls for a mandatory severance
when the evidence establishes that a joint trial would be prejudicial to any defendant. (2) Id.

 A trial court abuses its discretion when a defendant files a timely motion to sever and presents
evidence that a joint trial would be prejudicial. Id.; Snow v. State, 721 S.W.2d 943, 945 (Tex.
App.-Houston [1st Dist.] 1986, no pet.). Absent evidence of prejudice to one defendant in a joint
trial, or evidence that one of the defendants has a prior admissible conviction, a motion for severance
is left to the trial court's discretion. See Patterson v. State, 783 S.W.2d 268, 270 (Tex.
App.-Houston [14th Dist.] 1989, pet. ref'd); see also King v. State, 17 S.W.3d 7, 17 (Tex.
App.-Houston [14th Dist.] 2000, pet. ref'd); Silva v. State, 933 S.W.2d 715, 718 (Tex. App.-San
Antonio 1996, no pet.). When an accused is not entitled to a severance as a matter of right, the denial
of a severance motion by the trial court constitutes an abuse of discretion only when the movant
satisfies the "heavy burden" of showing "clear prejudice." See Patterson, 783 S.W.2d at 270.
Moreover, the mere allegation that prejudice will result is not evidence of, or a sufficient showing of,
prejudice under article 36.09, particularly when the severance is discretionary with the trial judge. See
id.

 In this case, Mendoza asserted at the hearing on his motion to sever that a joint trial would
prejudice either defendant because they would present antagonistic defenses. Although the motion

was timely, Mendoza did not present any evidence at the hearing. His counsel simply told the judge
that he anticipated that the co-defendants would be presenting antagonistic defenses. (3) Neither defense
attorney presented evidence of alibi defenses at the pre-trial hearing. When the court asked for legal
authority to support the severance motion, counsel offered nothing other than to apprise the court
that it had the discretion to grant the motion. Events at trial cannot become the basis for showing that
the trial court abused its discretion before trial, unless the trial court was presented with evidence,
before trial, indicating that the prejudicial events might occur. See Fisher v. State, 681 S.W.2d 202,
206 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd). An accused must apprise the trial court of
exactly what the inconsistent defenses will be, or what other reason for prejudice exists. Proof that
would demonstrate differing degrees of culpability among the defendants is not enough to warrant
separate trials. Instead, the co-defendants' positions must be "mutually exclusive" in the sense that
the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.
See Silva v. State, 933 S.W.2d 715, 719 (Tex. App.-San Antonio 1996, no pet.).Where the motion
to sever is not supported by evidence, no abuse of discretion is demonstrated and, therefore, its denial
is not an abuse of discretion. See Sanne v. State, 609 S.W.2d 762 (Tex. Crim. App.1980); Silva, 933
S.W.2d at 718. 

 However, the court of criminal appeals now recognizes that the trial court has a continuing
duty to order a severance after trial begins upon a showing of sufficient prejudice. See Aguilar, 26
S.W.3d at 909. Therefore, once the trial court has been alerted by a timely pre-trial motion to the
potential for prejudice in a joint trial, Aguilar implies that reconsideration of the previously filed
severance motion during the trial will be considered timely. See id. In the absence of authority to the
contrary, we hold that the burden to reurge a motion for severance lies with the counsel of the
affected party. In this case, one judge heard the pre-trial severance motion and a visiting judge
presided at trial on the merits. While we do not doubt that the visiting judge prepared for trial by
reviewing the motions and orders which shaped this case for trial on the merits, it is the trial counsel
who is best prepared to bring clear evidence of prejudice to the court's attention by reurging the
motion to sever as necessary and at the earliest opportunity.

 In the absence of discovery of another defendant's alibi evidence, we recognize that a co-defendant may have no clear evidence to present to the court at the time the pretrial motion to sever
is heard, yet may be harmed by it once the trial unfolds. Mendoza argues that at the trial, each
defendant offered conflicting alibi defenses which caused the jury to have to choose between them,
thus causing prejudice. Mendoza offered as an alibi that he was jogging at the high school track and
he had loaned his car to Aguillon. Aguillon's alibi was that he was attending a high school night class.
While these alibis are somewhat conflicting, they are not so antagonistic as to be mutually exclusive
defenses. Both defendants asserted that they were elsewhere when the murder occurred. Mendoza
testified that he loaned his car to Aguillon and asked him to pick up Joe Martinez that night. Although
Martinez, a juvenile, did not testify at the trial, the jury was aware that he had reported the murder
to the law enforcement authorities. Aguillon did not testify and the defensive evidence he presented
did not necessarily inculpate Mendoza. It was possible for the jury to believe one or both of the alibis
or believe neither one. In this case, the jury believed Aguillon's witnesses but did not believe
Mendoza. 

 Like Texas, federal jurisdictions favor joint trials and provide considerable latitude to the trial
court to fashion a fair trial for co-defendants. Mutually antagonistic defenses are not prejudicial per
se. See United States v. Quintero, 38 F.3d 1317, 1339 (3d Cir. 1994), cert. denied, 513 U.S. 1195
(1995). To reach that level, the interests of each defendant must aspire to undermine the other's
position or to be in such a position as to be comparable to that of the prosecutor. See Goode v. State,
740 S.W.2d 453, 460 (Tex. Crim. App. 1987); De Grate v. State, 518 S.W.2d 821, 822 (Tex. Crim.
App. 1975). Only where there is "a serious risk that a joint trial would compromise a specific trial
right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or
innocence," is a severance mandated. Quintero, 38 F.3d at 1339. In this case, Aguillon did not testify
against Mendoza, so that Mendoza, in turn, would be forced to waive his Fifth Amendment right not
to testify in his own defense. Rather, it was Mendoza who took the stand presumably in an attempt
to counter the damaging evidence of his previously admitted confessions.

 We find no error in the denial of the pretrial motion to sever. The motion was never reurged
during the trial, but even if the trial court had an obligation to reconsider the motion, sua sponte, we
do not believe that the evidence before the court presented a prejudicial conflict such that it
compromised Mendoza's right to a fair trial. The defenses presented were somewhat antagonistic,
but were not mutually exclusive. Accordingly, appellant's first issue is overruled.

Jury Instruction

 Mendoza also asserts that the court erred when it denied most of a proposed jury instruction
concerning his confession. The proposed instruction was composed of four paragraphs intended to
advise the jury (1) of the general law on voluntariness; (2) to disregard the confession if they believed
Mendoza had not freely, voluntarily, intelligently and knowingly waived his right to counsel before
making the statement; (3) to disregard the confession if they believed that the investigator had
induced the confession by telling Mendoza it could be used "for" him; and (4) to disregard the
confession if Mendoza was threatened, coerced, or put under duress by an officer, or was prevented
from contacting an attorney. The State objected that paragraphs 2-4 impermissibly commented on
the weight of the evidence. The court granted the first paragraph concerning the law of voluntariness,
and denied the remaining three paragraphs. Mendoza preserved error by objecting to the charge as
given to the jury.

 To determine whether a particular jury charge constitutes reversible error, we apply the
following standard of review:

 If the error in the charge was the subject of a timely objection in the trial court, then
reversal is required if the error is "calculated to injure the rights of defendant," which
means no more than that there must be some harm to the accused from the error. In
other words, an error which has been properly preserved by objection will call for
reversal as long as the error is not harmless. . . . [T]he actual degree of harm must be
assayed in light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and any
other relevant information revealed by the record of the trial as a whole.


Almanza v. State, 686 S.W.2d 157,171 (Tex. Crim. App. 1984) (op. on rehearing); see Tex Crim.
Proc. Code Ann. art. 36.19 (Vernon 1981).

 Taking each paragraph of the proposed instruction in turn, we review the basis for requesting
the second paragraph on voluntariness - Mendoza's claim that he was denied the benefit of counsel
prior to making his confession. The jury heard conflicting evidence on this issue. Appellant testified
that following his arrest he repeatedly requested an attorney. The two investigating officers denied
that Mendoza ever requested an attorney prior to making his statement. They also testified that they
read Mendoza his right three times between his arrest and his execution of the written statement and
that he voluntarily waived those rights.

 Requested paragraph three of the proposed instruction relates to Mendoza's claim that the
investigator, Zapata, had induced the confession by telling Mendoza it could be used "for" him.
Mendoza testified that Zapata suggested that if he confessed, he would be helping himself. Zapata
testified that he told Mendoza he could help himself by making "something wrong right." Zapata
denied promising a reduction in sentence in return for a confession. The case Mendoza relies on is
a pre-Miranda case, White v. State, which found error where the defendant testified he was advised
that if he made a statement, it could be used "for or against" him and the court did not instruct the
jury appropriately. See White v. State, 289 S.W.2d 279, 280-81 (Tex. Crim. App. 1956). The court
held that where there was a fact issue raised as to whether White had been so admonished or advised,
the jury should have been instructed to disregard the confession if it believed the defendant's version
of the admonishment. Id. 

 The fourth paragraph of the requested instruction would have advised the jury to disregard
the confession if they believed it was coerced. Mendoza testified that he first asked for an attorney
while sitting handcuffed in the patrol car, and in response, Ranger Holdridge slammed the car door
shut. Mendoza testified he was threatened with the death penalty. Holdridge denied he made such a
threat but admitted telling Mendoza that the death penalty was a possibility for the crime charged.
Holdridge also denied that Mendoza ever requested a lawyer in his presence. And although Holdridge
stated he did not have a clear recollection of the interview, because he conducts so many of them, he
did recall that Mendoza was soft-spoken and well-mannered during the interview and Holdridge did
not need to raise his voice to try to intimidate him or make Mendoza talk. "He was talking to me
freely as it was." Webb County Investigator Zapata testified that Mendoza had been told that others
had given statements about the murder. Both officers denied using "cuss words" to intimidate
Mendoza.

 The admissibility of the confession was determined at a pre-trial suppression hearing and that
ruling is not challenged on appeal. The jury instruction given on voluntariness, the first paragraph of
the appellant's proposed instruction, tracks the language used in article 38.21 of the code of criminal
procedure. Tex. Crim. Proc. Code Ann. art. 38.21 (Vernon 1979); see also McClung &
Carpenter, Texas Criminal Jury Charges, at 346 (1997-98 ed.). That is all that our procedural
code requires. See Tex. Crim. Proc. Code Ann. art. 38.22, § 7 (jury to be instructed generally on
the law pertaining to statement); White v. State, 779 S.W.2d 809, 827-28 (Tex. Crim. App. 1989)
(38.22 does not contemplate submission of every technical or mechanical aspect of disputed issue).

The three rejected fact specific paragraphs on the proposed instruction went beyond a general
instruction on the law of voluntariness and amounted to a comment on the weight of the evidence.

See Penry v. State, 903 S.W.2d 715, 748 (Tex. Crim. App.1995); White, 779 S.W.2d at 828;
Gutierrez v. State, 945 S.W.2d 287, 291(Tex. App.-San Antonio 1997, no pet.). There is no showing
of harm when a proper instruction is given and an improper instruction is rejected.


 Appellant's issues are overruled and the judgment of the trial court is affirmed.


 Alma L. López, Justice

Publish


1. Judge Flores presided over the pre-trial hearings. The Honorable Peter Michael Curry, Visiting Judge,
presided over the trial on the merits.
2. The other exception occurs when one of the defendants has a previous admissible conviction. Then severance
of that defendant is mandatory. Id.; Loveless v. State, 800 S.W.2d 940, 945 (Tex. App.-Texarkana 1990, pet. ref'd).
That exception is not implicated in this case.
3. With few exceptions, unsworn statements by an attorney are not "evidence." See, e.g., Lott v. City of Fort
Worth, 840 S.W.2d 146, 150 (Tex. App.-Fort Worth 1992, no writ) (holding that generally an unsworn statement by
counsel is not evidence in the context of a Batson hearing); but see Peterson v. State, 961 S.W.2d 308, 311(Tex.
App.-Houston [ 1st Dist.] 1999, pet. ref'd)("non-evidence" presented without objection and considered by court
becomes "some evidence"). This court has found that the sworn testimony of a defense attorney at a severance hearing
was sufficient to demonstrate that prejudice would result if the co-defendants were tried together. See Silva, 933 S.W.2d
at 719.