**Veronica Dawn QUALLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–03–00116–CR.

Court of Appeals of Texas, El Paso.

Oct. 21, 2004.

Michelle Greene, Odessa, for appellant.

Frank D. Brown, District Attorney, for the State.

Before Panel No. 4 BARAJAS, C.J., LARSEN and McCLURE, JJ.

## *OPINION*

RICHARD BARAJAS, Chief Justice.

This is an appeal from convictions for the offenses of capital murder and injury to a child. The court assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice on the capital murder conviction and forty years imprisonment on the injury to child conviction. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

On December 26, 2001, Appellant and her codefendant, Sonny Dale Moore, entered Charlie's Pawn Shop on the Andrews Highway in Odessa, Texas. They had a small child with them. The manager of the shop, Rhonda Dolloff, testified that the child's eyes were blackened, and it ap-

peared that she had a broken nose. She appeared swollen and bruised, and there was bruising between her fingers. It seemed to Dolloff that the child could not turn her head and she had difficulty raising her arm. The child had a drugged and spacey look to her face. After about forty minutes, as the three left the shop it appeared that the child's legs would not work.

On December 28, 2001, the couple returned to the pawn shop with the child. Diana Salas, an employee, saw bruising on the child's face, hands, and side. The child's eyes were blackened, she had bruising on her stomach, and she acted in a sluggish manner. Rhonda Dolloff was also in the store. Moore was trying to sell some firearms. Dolloff asked Appellant about the child's injuries and Appellant stated that the child had fallen out of a window. When the three left the store, the employees called police.

Cliff Harris, the Sheriff of Pecos County, Texas, testified that on December 28, 2001, he received a call from a pawn shop owner in Odessa regarding an injured child. He sent a deputy to look for a pickup truck coming from Odessa. Deputy Jerry Kresta stated that he was told to look for a 1986 Ford pickup. He watched for the vehicle for approximately three hours.

On January 3, 2002, Adam Marquez was working the dispatch desk at the Fort Stockton Police Department. He received an emergency 911 call from Sonny Dale Moore at 10:11 p.m. Moore stated that a child had fallen out of bed and was unconscious. Mike Laurence, an EMT, heard the call and responded to the scene. Upon arrival, he found that the child had no pulse and her lips were blue.

Ilan Wilde testified that he is a physician's assistant at Pecos County Memorial Hospital. On January 3, 2002, at 10:30 p.m., an ambulance arrived carrying a child. She was not breathing and she had no heartbeat. She had multiple bruises around her eyes, legs, and knees. Appellant and Moore told him that the child had fallen out of the bed the night before, had fallen down some stairs, and had fallen over a toy box.

Toni Proper, a respiratory therapist, was also working at the hospital when the child arrived. The child's name was Whisper Lynn. Proper was in charge of managing the child's airway. The witness noticed recent bruising on the child's forehead and other bruising on her body.

Oscar Gallegos, a sheriff's deputy with the Pecos County Sheriff's Office, stated that he prepared a diagram of Appellant's residence where the child died. He took a measurement that indicated the child's bed was nineteen inches above a carpeted floor.

Dr. Jerry Spencer testified that he was a pathologist in Lubbock County, Texas. He performed an autopsy on a child named Whisper Lynn on January 4, 2002. He described major injuries to her head, mouth, abdomen, and arm. The head injury was the fatal injury. The injuries were both recent and older healing injuries. Her lower front teeth had been knocked out and had healed over. This injury occurred about three or four weeks before her death. Her arm was recently broken and her elbow was dislocated. The abdominal injuries were the result of blunt trauma from a fist or from a kick. It was one of the worst such cases he had ever seen.

Billy McGovern testified that he was Appellant's and Moore's landlord. He had become friendly with Appellant and Moore, and he lived nearby. He knew the victim and he noticed on one occasion that the child had a black eye. On another

occasion, he saw the victim had a busted lip. He also observed that the child's hair had disappeared. Upon inquiry, he was told that the child was pulling her hair out. He warned Appellant and Moore that he would inform Child Protective Services if he saw any more bruises on the child.

Tulon Murphy, a deputy sheriff with the Pecos County Sheriff's Office, testified that he took a confession from Moore wherein he admitted killing the child. Moore stated that he lost his temper when he found the child out of her bed. He stated that he frequently lost his temper in that manner. He grabbed her by both arms and threw her on the bed real hard. She bounced off of the bed and he grabbed her by the throat. He then grabbed her by the neck and threw her back on the bed very hard. He was still very angry. He noticed that the child was having a hard time breathing. Moore stated that Appellant had nothing to do with the killing.

Moore testified in his own behalf. He stated that he did not kill the child and implicated Appellant as she was the only other individual in the home at the time of the death.

Both Appellant and her codefendant, Moore, were convicted of capital murder. Appellant was convicted under a theory of omission, by failing to protect the child from Moore. Appellant was also convicted of injury to a child by omission.

In Issue No. One, Appellant maintains that the court erred in failing to grant her motion to sever the trial of Appellant and her codefendant, Sonny Moore. Appellant and Moore both filed motions to sever based upon the prejudicial effect a joint trial would have on their respective defenses. Appellant alleged that she believed Moore would be changing his statement and would implicate her in the death of her daughter. During the trial, Appellant and Moore reargued their requests for sever-ance based upon the prejudicial effect the joint trial would have on each of their respective defenses.

Article 36.09 of the Texas Code of Criminal Procedure states:

> Two or more defendants who are jointly or separately indicted ... for the same offense ... may be, in the discretion of the court, tried jointly or separately as to one or more defendants ... and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

*See* Tex. Code Crim. Proc. Ann. art. 36.09 (Vernon 1981).

██ Article 36.09 mandates severance where a prior criminal conviction of one codefendant is admissible or where a joint trial would, as a matter of law, prejudice a codefendant; otherwise, the granting of a severance is within the sound discretion of the trial court. *Silva v. State,* 933 S.W.2d 715, 718–19 (Tex.App.-San Antonio 1996, no pet.). The denial of a motion to sever will constitute an abuse of discretion only when the movant satisfies the heavy burden of showing "clear prejudice." *King v. State,* 17 S.W.3d 7, 16 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Louis v. State,* 825 S.W.2d 752, 757 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd).

██ When the defendant has filed a pretrial motion for severance based on prejudice that the court denies, the trial court has a continuing duty under the Federal Constitution to order a severance *sua sponte* if sufficient prejudice becomes known during the course of the trial.

*Aguilar v. State,* 26 S.W.3d 901, 909 (Tex. Crim.App.2000). Different degrees of culpability of codefendants does not warrant severance. *See Morales v. State,* 466 S.W.2d 293, 296 (Tex.Crim.App.1971). In order to show clear prejudice, it must be shown that the respective defenses of the parties are mutually exclusive to the extent that the jury must believe the core of one defense and must necessarily disbelieve the core of the other. *Aguilar v. State,* 39 S.W.3d 700, 702 (Tex.App.-Corpus Christi 2001, pet. ref'd).

While it appeared at trial that Appellant had a prior conviction for recklessly causing injury to a child under fourteen years of age, this conviction was not admitted at trial. Therefore, Appellant had failed to demonstrate harm. *See Rivello v. State,* 476 S.W.2d 299, 300 (Tex.Crim.App.1972).

■ Regarding whether or not the defenses were mutually antagonistic, we find that the defenses were mutually antagonistic. If the jury were to believe Moore's assertions at trial, then Appellant committed the offense. This would be antagonistic to her defense that she did not commit the offense and did not fail to protect the child from Moore. Accordingly, we find that the court abused its discretion in failing to sever the trials in that there was evidence before it of clear prejudice to Appellant's defense. *See Silva,* 933 S.W.2d at 719. Issue No. One is sustained.

■ In Issues Nos. Two and Three, Appellant asserts that the evidence was legally and factually insufficient to support the conviction for capital murder and the conviction for injury to a child.[1] In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Humason v. State,* 728 S.W.2d 363, 366 (Tex. Crim.App.1987). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State,* 836 S.W.2d 700, 702 (Tex.App.-El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State,* 901 S.W.2d 640, 650–52 (Tex.App.-El Paso 1995, pet. ref'd); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex. Crim.App.1991); *Leyva v. State,* 840 S.W.2d 757, 759 (Tex.App.-El Paso 1992, pet. ref'd); *Bennett v. State,* 831 S.W.2d 20, 22 (Tex.App.-El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence

---

1. Given the discussion and disposition in the first issue, we will address only the legal sufficiency of the evidence.

in favor of the verdict. *Matson,* 819 S.W.2d at 843, *quoting Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State,* 900 S.W.2d 886, 897 (Tex.App.-El Paso 1995, pet. ref'd).

 In the charge of the court, the jury was required to find that Appellant caused the death of a child under six years of age by having a legal duty to protect the child and she failed to protect the child from Sonny Dale Moore.

In the present case, there was evidence that the child had received numerous injuries over an extended period of time. During the visit to the pawn shop, the testimony indicated that the child was in obvious, severe distress suffering from injuries. She was not acting normally and had an inappropriate demeanor. This caused the employees at the pawn shop to call the authorities. The pathologist testified that there were recent injuries. More telling, he related that some of the injuries to the mouth were three to four weeks old. The child had been pulling out her hair and the evidence demonstrated that the child was in obvious physical and emotional distress prior to the incident that resulted in her death. Billy McGovern testified that he had expressed concern for the child's well-being and he threatened both Qualley and Moore that he would contact the authorities if the injuries continued. Viewing the evidence in the light most favorable to the verdict, we find that the evidence was legally sufficient to support the conviction for capital murder.

Regarding the conviction for injury to a child, the jury was required to find that Appellant did intentionally and knowingly by omission cause serious injury to a child younger than fifteen years of age by failing to protect her from Sonny Dale

Moore and she had a legal duty to act. Applying the aforementioned analysis to the injury to child conviction, we find that in viewing the evidence in the light most favorable to the verdict, that the evidence is legally sufficient to support the conviction. Issues Nos. Two and Three are overruled.

Having overruled Appellant's Issues Nos. Two and Three, but further having sustained Issue No. One, we reverse the judgment of the trial court and remand the cause for proceedings not inconsistent with this opinion.