# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00267-CR

**Kyle James Moesch, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 64756, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

This is one of three appeals arising from a capital murder trial against three co-defendants. The jury convicted the appellant in this cause, Kyle James Moesch, of the offense of capital murder for remuneration. *See* Tex. Penal Code Ann. § 19.03(a)(3) (West Supp. 2011). The State did not seek the death penalty, and punishment was automatically assessed at life imprisonment without the possibility of parole. In two issues on appeal, Moesch asserts that the district court abused its discretion in denying his motion to sever his trial from the trial of his co-defendants, Kathryn Nellie Briggs and John Anthony Valdez, Jr.,[1] and that the district court reversibly erred in failing to *sua sponte* instruct the jury that the evidence pertaining to each defendant should be considered separately and independently. We will affirm the judgment of conviction.

---

[1] Briggs and Valdez filed similar motions to sever, which were also denied. Both Briggs and Valdez were also convicted of capital murder. Briggs's appeal is before us as cause number 03-11-00275-CR, while Valdez's appeal is before us as cause number 03-11-00274-CR.

## BACKGROUND

The jury heard evidence that on October 14, 2008, the body of Fort Hood Staff Sergeant Ryan Sullivan was discovered in the apartment where he had lived. Dr. Reid Quinton, a medical examiner who had performed an autopsy on the body, testified that Sullivan had received approximately 34 stab wounds to his abdomen, head, and other areas of his body, including defensive stab wounds to his arms and hands and likely fatal stab wounds that punctured his neck, heart, and lungs. Quinton also testified that the level of decomposition in the body was consistent with Sullivan having been killed in the early morning hours of October 11. The State's theory at trial was that Valdez had killed Sullivan, that Moesch had assisted Valdez in the crime, and that Briggs, who had been in a past romantic relationship with Sullivan, had orchestrated the killing in order to recover proceeds from Sullivan's life insurance policy, of which she was a named beneficiary.

The complex factual background of this case is fully discussed in this Court's opinion affirming the conviction of Moesch's co-defendant Briggs and will not be repeated here. *See Briggs v. State*, No. 03-11-00275-CR (Tex. App.—Austin Aug. 24, 2012, no pet. h.) (mem. op., not designated for publication). We discuss further background details only as necessary to address the issues raised by Moesch in this appeal.

## ANALYSIS

### Motion to sever

In his first issue, Moesch asserts that the district court abused its discretion in denying his motion to sever his trial from the trials of his co-defendants. Severance is governed by article 36.09 of the code of criminal procedure, which provides that two or more defendants may,

at the discretion of the court, be tried jointly for any offense growing out of the same transaction unless, upon timely motion to sever, it is shown either that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant. Tex. Code Crim. Proc. Ann. art. 36.09 (West 2007). Moesch argues only the second ground, contending that he was prejudiced by a joint trial with Briggs and Valdez.

In drafting article 36.09, "the Legislature intended for defendants accused of the same offense to be tried together most of the time." *Qualley v. State*, 206 S.W.3d 624, 631 (Tex. Crim. App. 2006). "'Prejudice,' then, cannot mean the types of circumstances or disagreements between parties that would normally be expected to [arise] during any trial containing multiple defendants.'" *Id*. Rather, "[t]o establish prejudice, the defendant must show a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence, and that the problem could not be adequately addressed by lesser curative measures, such as a limiting instruction." *Id*. at 636. It is not enough for the defenses of co-defendants to be mutually exclusive or antagonistic. *See id*.

Moesch claims that he was entitled to a severance because of the "prejudicial hearsay statements" made by Valdez that, in Moesch's view, were admissible against Valdez but not against him. Moesch also complains of the "inherent prejudice of being forced to trial with co-defendants of overwhelming culpability."

The district court would not have abused its discretion in concluding that Moesch's concerns are "the types of circumstances or disagreements between parties that would normally be expected to [arise] during any trial containing multiple defendants" and thus do not demonstrate prejudice. *See id*. at 631. Regarding Moesch's assertion that he was "less culpable"

3

of the offense than Briggs and Valdez, even assuming that this is true, it is well settled that mere proof of differing degrees of culpability will not support a severance. *See, e.g.*, *King v. State*, 17 S.W.3d 7, 17-18 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Davila v. State*, 4 S.W.3d 844, 847 (Tex. App.—Eastland 1999, pet. ref'd); *Silva v. State*, 933 S.W.2d 715, 719 (Tex. App.—San Antonio 1996, no pet.); *Gibbons v. State*, 794 S.W.2d 887, 891 (Tex. App.—Tyler 1990, no pet.). The district court thus would not have abused its discretion in finding that Moesch was not entitled to a severance on that ground. Regarding Moesch's claim that he was prejudiced by the admission of Valdez's hearsay statements to Jacobs, the record supports a finding by the district court that Moesch and Valdez conspired together to commit the murder. Accordingly, the district court would not have abused its discretion in finding that Valdez's statements to Jacobs were admissible not only against Valdez, but also against Moesch under the co-conspirator exception to the hearsay rule. *See* Tex. R. Evid. 801(e)(2)(E); *see also Meador v. State*, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991) ("[T]he co-conspirator exception to the hearsay rule is [] not limited to prosecutions for conspiracy; it is a rule of evidence applicable to any offense."). Accordingly, Valdez's statements to Jacobs would have been admissible against Moesch even if he had been tried separately, and the district court would not have abused its discretion in finding a lack of prejudice on that ground. Furthermore, to the extent that Moesch is claiming prejudice from the admission of any statements made by Briggs, we observe that the jury was instructed that any such statements were admitted "solely for the purpose of serving as evidence in the case against [Briggs] . . . and such statements cannot be considered as any evidence against [Moesch], or in any way to connect the defendant with the alleged offense." The limiting instruction further provided that the jury "must not consider such alleged statements of [Briggs], if any, in any way as any evidence whatsoever

4

against [Moesch], and you will restrict your consideration of such statements, if any, to the determination of the guilt or innocence of [Briggs], if you do consider it, and not to [Moesch]." Such an instruction, the district court could have reasonably found, would alleviate any risk of prejudice to Moesch. *See id.*; *see also Zafiro v. United States*, 506 U.S. 534, 539-41 (1993) (explaining that "even if there were some risk of prejudice" in a joint trial, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice").

On this record, Moesch has failed to show "a serious risk that a specific trial right would be compromised by a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." *See Qualley*, 206 S.W.3d at 636. Accordingly, we cannot conclude that the district court abused its discretion in denying Moesch's motion to sever. We overrule Moesch's first issue.

**Alleged charge error**

In his second issue, Moesch asserts that the district court reversibly erred in failing to *sua sponte* instruct the jury "to consider the evidence of each individual separately, without reference to the guilt or innocence of Moesch's co-defendants." According to Moesch, "because the trial court failed to ensure that Moesch's guilt be determined individually," by so instructing the jury, "the judgment must be reversed and remanded for a new trial."

Assuming without deciding that such an omission from the charge was error,[2] Moesch did not request such an instruction or otherwise object to its omission. Accordingly, he is entitled

---

[2] In his brief, Moesch cites to no authority holding that it is. *See* Tex. R. App. P. 38.1(i).

to reversal only if the record shows that he was egregiously harmed by the omission. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Charge errors that result in egregious harm are those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). What is ultimately required is a showing that the error deprived the defendant of a "fair and impartial trial." *Almanza*, 686 S.W.2d at 172. When determining if such a deprivation occurred, we are to consider: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) arguments of counsel; and, (4) any other relevant information revealed by the record of the trial as a whole. *See Hutch*, 922 S.W.2d at 171 (citing *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993)).

Throughout the trial in this case, the jury was informed and reminded on multiple occasions that an individual verdict was required for each defendant. At the beginning of voir dire, the district court instructed the prospective jurors that during deliberations, the jury would have to "determine guilt or innocence and whether the State has met its burden of proving the defendants, any of them or each of them or none of them, guilty beyond a reasonable doubt, if they have in fact proven their case beyond a reasonable doubt." The State, in its voir dire, was even more explicit about this requirement:

> You have three defendants in the case. And Judge Trudo has touched on this but I want to do it again. You will be, if you're selected to be on the jury, you will be given three separate verdict forms, three separate sets of instructions, one for each defendant and you will conclude and deliberate individually on each defendant. You will deliberate at the same time as a group, but you must believe beyond a reasonable doubt that defendant A is guilty or not, defendant B is guilty or not, defendant C is guilty or not.

6

They are each individually adjudged by you as a juror. Does everyone understand that? So obviously you could find two guilty and one not guilty, you can find all three guilty, you can find all three not guilty. But you do it one at a time. And you must find beyond a reasonable doubt that that defendant is guilty and on his or her verdict form before you move on to the next one. Does that make sense?

The record reflects that at least one prospective juror responded, "Yes." The record reflects that none of the prospective jurors indicated that they did not understand. Counsel for Moesch later emphasized the same point:

And what I urge you to do, what I respectfully ask you to do on behalf of Kyle Moesch is judge each of these individuals as an individual. Look at the evidence or testimony that you hear in this courtroom and try to determine if it relates, how it relates to each individual defendant that's accused in this case.

This does not have to be a group verdict by any means, just as [the prosecutor] told you. You have the right to return an individual verdict as to each of these young people. And at the appropriate time in the case each lawyer will be addressing that further. But keep in mind that even though there's three defendants, you're judging one defendant.

Similar comments were made during voir dire by the attorneys for Briggs and Valdez.

As the trial progressed, evidence was presented regarding the involvement of each individual defendant in the crime, and the attorney for each defendant, during cross-examination, emphasized how certain evidence did not apply to that defendant. We also observe that there was evidence presented during trial relating specifically to Moesch's individual involvement in the murder. In written statements to the police, Moesch admitted that he was with Sullivan and in his apartment on the night he was murdered and also admitted, in one of the statements, that "when initially approached" about the hit on Sullivan, he "offered to help in any way needed for a cut." Also, Jacobs testified that Moesch told him the morning after the murder, "It's done, Sully's dead,"

and showed Jacobs what appeared to be blood on Moesch's pants after Moesch had just finished "washing his hands." Moreover, phone records were admitted into evidence that tended to implicate Moesch in the murder, and Moesch's DNA was found at the crime scene. Contrary to Moesch's assertion, this was not a case in which the evidence of his involvement in the crime was weak.

Furthermore, a separate charge was submitted for each defendant, each separate charge contained a verdict form relating to that individual defendant alone, and each separate charge was read to the jury separately prior to closing arguments. We also observe that during closing arguments, each attorney for each defendant, as well as the prosecutors, emphasized the evidence relating to each individual defendant. There was no suggestion by anyone that anything other than an individual verdict for each defendant would be appropriate.

On this record, we cannot conclude that Moesch was denied a fair and impartial trial by the alleged charge error. We overrule Moesch's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: August 24, 2012

Do Not Publish

8