NO. 07-02-0358-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 12, 2004

_____

MARTIN GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-01D-058; HONORABLE H. BRYAN POFF, JR., JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

**OPINION**

In four issues, appellant Martin Garcia challenges his conviction of capital murder and the resulting sentence of life imprisonment in the Texas Department of Criminal Justice–Institutional Division. Appellant and his co-defendant Bryan Parrack were charged in a single indictment for the felony offense of capital murder. Appellant filed a pre-trial motion requesting severance of his trial from Parrack's. After a hearing, the motion was

denied, the case proceeded to jury trial and appellant was convicted of capital murder. Appellant reurged the motion to sever during trial. He presents three issues relating to the trial court's refusal to sever his trial from Parrack's, and a fourth issue asserting that the evidence was legally and factually insufficient to sustain his conviction. We will affirm.

On February 25, 2001, at approximately 10:20 p.m., Tony Garcia, assistant manager of the Thriftway East grocery store in Hereford, Texas, was shot and killed as he left the store after closing with the day's cash deposits. When officers arrived at the scene, they found Tony Garcia slumped over in the driver's seat of his vehicle, which was sitting in the parking lot with its engine running. He had been shot three times, once in the chest, once in his right side, and once in his legs, where a bullet entered and exited his right leg, lodging in his left leg. He also had another wound to the chest caused when the jacketing of the bullet that entered his chest separated from the bullet and entered separately. Autopsy results indicated that one of the wounds in his chest was the probable cause of death. The bullets recovered from wounds in his chest and side were of .38 caliber class, while his leg wounds were caused by a single .22 caliber bullet. The store's money bag was with him.

### *Sufficiency of Evidence*

Appellant's fourth issue argues the evidence was legally and factually insufficient to convict him of capital murder. We begin with the fourth issue because disposition of it requires discussion of the evidence presented at trial.

To find appellant guilty of capital murder, as defined in the charge to the jury, the jury was required to find that he intentionally caused the death of Tony Garcia while in the course of attempting to commit the offense of robbery.[1] Appellant's argument on evidentiary sufficiency is based on the premise that he could be found guilty of capital murder only if his co-defendant killed Tony Garcia in furtherance of a conspiracy with appellant. Appellant argues there was no evidence that his co-defendant Parrack caused the death of the victim, and appellant therefore could not be guilty of capital murder. Appellant's argument is faulty. It fails to consider the complete jury charge, which read, in relevant part:

> "Now, if you find from the from [sic] evidence beyond a reasonable doubt that on or about February 25, 2001, in Deaf Smith County, Texas, the defendant, Martin Garcia, did intentionally cause the death of Tony Garcia by shooting him with a gun, while said defendant was then and there in the course of attempting to commit the of [sic] robbery of Tony Garcia of his property, then you will find the defendant guilty of capital murder; . . ."

The charge continued with an alternate theory whereby appellant could be found guilty of capital murder if his co-defendant intentionally shot Tony Garcia, intending to kill him pursuant to a conspiracy between appellant and his co-defendant.[2] The jury thus could have found appellant guilty under the charge if they determined either he intentionally

---

[1]The indictment read: "The Grand Jurors . . . present . . . that Bryan Ray Parrack and Martin Benz Garcia . . . on or about the 25th day of February, 2001, and anterior to the presentment of this indictment, in the County and State aforesaid, did then and there, intentionally cause the death of an individual, namely Tony Garcia, by shooting him with a gun while in the course of attempting to commit the offense of Robbery of Tony Garcia."

[2]The jury charge with respect to each defendant contained language consistent with Penal Code sections 7.01(a) and 7.02(a)(2), concerning parties and criminal responsibility for another's conduct.

caused the death of Tony Garcia by shooting him in the course of attempting to commit a robbery, or that Parrack did so and appellant was criminally responsible for the action. The verdict rendered by the jury states, "We, the Jury find the defendant, Martin Garcia, guilty of Capital Murder as alleged in the indictment." The verdict will be upheld if the evidence is sufficient under either of the alternative theories. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App. 1992) (general verdict of guilty will be upheld when evidence is sufficient under any of the theories submitted), *cert. denied*, 509 U.S. 926, 113 S. Ct. 3047, 125 L. Ed 2d 731 (1993).

In reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). The standard for legal sufficiency review "gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). In a review of the record for factual sufficiency, we consider all the evidence in a neutral light, and will set aside the verdict if the evidence supporting it, either (1) standing alone or (2) when weighed against the contrary evidence, is too weak to establish the elements of the offense beyond a reasonable doubt. The analysis is to answer the single ultimate question: considering all the evidence in a neutral light, was the jury rationally justified in finding appellant guilty beyond a reasonable doubt? *See Zuniga v. State*, 144

S.W.3d 477, 481 (Tex.Cr.App. 2004); *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App. 2001). A proper appellate factual sufficiency review must include discussion of the most important and relevant evidence that the appellant claims undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603-04 (Tex.Crim.App. 2003).

The State presented the testimony of appellant's brother Jose Garcia. He testified that appellant, prior to the day of the shooting, told him appellant and Parrack were planning to rob the Thriftway East grocery store.[3] Jose further testified that the day of the shooting appellant described how he and Parrack planned to carry out the robbery. Jose stated, "He told me Parrack was going to be across the street on the building and he was going to shoot the manager in the legs and Martin was going to come from across the street and get the money." He testified appellant left their home with Parrack. Later that night Jose was awakened by appellant. Jose testified, "I woke up, I don't know what time it was, my brother came into the room, he told me that he shot Tony and I asked him if he had killed him and he said I don't know, but he had seen Tony slump over the steering wheel and the car took off in reverse and that he ran up to the car and tried opening the door but it wouldn't open so he took off."

Jose also testified that a few days after the shooting appellant had a black handgun, and it was the gun with which he had shot the victim. Appellant asked Jose what he should do with the gun. Jose advised him to get rid of it.

---

[3]Parrack was a former Thriftway employee.

The night of the shooting, individuals near the scene of the crime heard gunshots. A hole in the windshield of the victim's vehicle, a shattered driver's-side window and glass in the interior of the vehicle indicated shots had been fired into the vehicle. Rodney Tucay, M.D., who performed an autopsy on the victim, testified that the victim had one wound in his left lateral chest, two wounds in his right upper chest, caused when a bullet and its copper jacket separated after being fired from a gun, and wounds in both legs caused by a single .22 caliber bullet. Dr. Tucay testified that the wound in the right upper chest, caused by the bullet, was the likely cause of death. He opined that the leg wounds would not have been life-threatening.

Investigators found two spent .357 Sig cartridge casings and two live .357 Sig cartridges in the Thriftway parking lot. A police search of the barn located behind the residence occupied by appellant and Jose produced a black Glock model 31 handgun (admitted as State's exhibit 16) wrapped in plastic on the barn's rafters. A live .357 Sig cartridge was found on the barn floor. Aaron Fullerton, a firearms examiner with the Texas Department of Public Safety crime laboratory, testified that the two spent .357 Sig cartridge casings found at the scene of the shooting were fired from the gun found in the barn. Fullerton identified the bullets removed from the chest of the victim as .38 caliber-class bullets, but could not say whether or not they were fired from that particular gun.[4]

---

[4]He testified they "might or might not" have been fired from the weapon admitted as State's exhibit 16. Fullerton's written report, also admitted into evidence, states: "The copper-jacket and copper-jacketed bullet [removed from the victim's body] are .38 caliber and were fired from a barrel having polygonal rifling with six lands and grooves with a

Justin Tarr, a former co-worker of Parrack's testified that, within weeks before the shooting, Parrack showed him a .357 Sig Glock handgun he owned. Tarr identified State's exhibit 16 as being like the gun Parrack showed him. A magazine fitting a Glock model 31 was found in Parrack's pickup truck during a police search a few days following the shooting. It contained ten live cartridges.

Charles Peters, a forensic scientist for the FBI, testified that an analysis of the content of one of the lead bullets removed from the victim revealed that it was "analytically indistinguishable" from the two live .357 Sig cartridges found at the scene and the live cartridge found in the barn behind appellant's residence, indicating that all those bullets were manufactured from the same molten pot of lead. The lead content of the other bullet taken from the victim's chest was different. Peters testified, though, that it is not uncommon for bullets originating with different pours of lead to end up in the same box of shells.

Police also found three spent .22 shell casings on the roof of a building across the street from the Thriftway and a rope hanging toward the ground from an exhaust pipe on the roof of that building. The rope had cut through the tin at the edge of the building's roof. Parrack's former girlfriend testified she was with him on the afternoon of the shooting, and as they drove near the Thriftway he said, "I'm going to 'hit' (or 'get') that mother f'er tonight," indicating he would be across the street from the Thriftway. Peters testified that

_____

clockwise rotation, which are the same class characteristics as the submitted .357 Sig caliber pistol; however, the copper-jacket and copper-jacketed bullet could not be identified or eliminated as having been fired from the submitted .357 Sig caliber pistol." Testimony also established that .357 caliber cartridges are included within the .38 caliber class.

-7-

the lead content of the .22 bullet found in the victim's leg was indistinguishable from that of .22 cartridges found in Parrack's pickup truck and in the residence appellant and his brother Jose shared.

As noted, appellant's evidentiary insufficiency argument on appeal focuses on the alternative theory included in the jury charge, that Parrack fired the shots that killed the victim and appellant was criminally responsible for that action. Appellant argues there was no evidence connecting the fatal bullets recovered from the victim's body with Parrack. The thrust of the State's case and evidence was that appellant was the shooter of the fatal shots. In his only specific contention addressing that theory of the evidence, appellant argues the State failed to show that the bullets causing the victim's death were fired from State's exhibit 16, the Glock pistol located in the barn behind appellant's residence. As noted, appellant's brother Jose testified the gun appellant displayed to him was the gun appellant used to shoot the victim. He described the weapon as a black handgun, and from the evidence we have recited the jury reasonably could infer that it was the same weapon police found in the barn. DPS firearms examiner Fullerton testified the gun found in the barn fired the two spent .357 Sig shell casings found at the scene of the shooting.

Appellant's co-defendant Parrack presented his father as a witness to support his alibi defense. Throughout trial, appellant challenged the credibility of witnesses and exhibits, but he presented no testimony or other evidence on his own behalf. Evidence contrary to the verdict included testimony that a red car was seen circling the victim's car at Thriftway East and leaving the scene of the shooting shortly after gunshots were heard by witnesses nearby. Investigators testified the individuals in the red car were arrested,

questioned and released after police concluded they had arrived at the scene after the gunshots.  Too, Parrack's father testified he sold a Glock model 31 at a gun show in December 2000.  His testimony was contradicted by that of a policeman.  Jose testified that Parrack picked appellant up at their home about 7:00 on the evening of the shooting. Daniel Fangman testified he spent the evening with Jose driving around Hereford, and that he picked Jose up around 5:00 p.m. Such conflicts in the evidence were for the jury to resolve.

Having reviewed all the evidence, and looking at the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt appellant was the shooter and committed the essential elements of capital murder. Further, viewing all the evidence in a neutral light favoring neither the State nor appellant, we also conclude the jury was rationally justified in finding appellant guilty beyond a reasonable doubt.  The evidence supporting appellant's guilt on the theory he was the shooter of the fatal bullets is neither too weak standing alone to support the finding of guilt beyond a reasonable doubt nor undermined by contrary evidence so strong that his guilt cannot be proven beyond a reasonable doubt.  *See Zuniga*, 144 S.W.3d at 481*; Griffin*, 614 S.W.2d at 159.  Our conclusions make it unnecessary that we consider appellant's evidentiary sufficiency argument directed at the alternative theory submitted to the jury. *See Guevara v. State*, No. 0424-03, 2004 WL 2347793, at *5 (Tex.Crim.App., October 20, 2004).  The evidence is both legally and factually sufficient to support the jury's general verdict.  Appellant's fourth issue is overruled.

***Denial of Motion to Sever***

At the hearing on appellant's pretrial motion to sever his trial from that of his co-defendant and the similar motion filed by Parrack, both defendants argued that their defenses were antagonistic and mutually exclusive. Parrack's trial counsel and an investigator hired by appellant testified. The investigator testified that the victim was wounded by two different types of bullets and because wounds caused by one caliber bullet were in the victim's legs and wounds from a different caliber were to the victim's chest, there could be a difference in intent of the shooters. He also testified that the evidence indicated one individual was the "mastermind" of the plan to shoot and rob Tony Garcia while others were solicited to help.

Attorneys for both defendants declined to disclose their intended defenses to the court. After the motion to sever was denied, the trial court judge stated that should evidence during trial indicate severance was proper, he would reconsider the motion. Motions to sever are governed by Texas Code of Criminal Procedure article 36.09:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

Tex. Crim Proc. Code Ann. art. 36.09 ( Vernon 1981).

In appellant's first point of error, he contends that the failure of the trial court to grant his motion to sever violated his due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution by impermissibly shifting the burden of proof from the prosecution to appellant. Appellant here contends that Code of Criminal Procedure article 36.09 is unconstitutional on its face. The motion to sever presented by appellant to the trial court, however, alleged: "A joint trial will be prejudicial to the defendant in that the State will present evidence admissible only against co-defendant that will confuse the jury and make it impossible to render a fair and impartial verdict. Also, the joint trial is prejudicial to the defendant due to the adverse position of the joint defendants forcing defendant to defend himself against both the State and the co-defendant."

As noted, appellant reasserted his motion to sever several times during trial as evidence was admitted. At no time, however, did appellant present the specific objection asserted in his first issue to the trial judge and afford him an opportunity to rule on it. *See Saldano v. State*, 70 S.W.3d 873, 886-87 (Tex.Cr.App. 2002)*; see* Tex. R. App. P. 33.1(a). The failure to timely and specifically object at trial may cause forfeiture even of some constitutional rights. *Id*. at 887, 889; *see Jenkins v. State*, 912 S.W.2d 793, 808 (Tex.Crim.App. 1993) (op. on reh'g). *See generally Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App. 1993); *Ex parte Alakayi*, 102 S.W.3d 426, 434-35 (Tex.App.–Houston [14th Dist.] 2003, pet. ref'd) (due process violation complaint not preserved). We agree with the State that appellant's due process challenge to the constitutionality of article 36.09 is not exempt from the requirement that it first be presented to the trial court, and may not be

raised for the first time on appeal. *See Webb v. State*, 899 S.W.2d 814, 817-18 (Tex.App.–Waco 1995, pet. ref'd) (challenge to constitutionality of statute on vagueness grounds not permitted for first time on appeal). Appellant's first issue on appeal does not comport with his trial objection, *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex.Crim.App. 1999)*; Curry v. State*, 910 S.W.2d 490, 495 (Tex.Crim.App. 1995); *see* Tex. R. App. P. 33.1(a)(1), and presents nothing for our review. The first issue is overruled.

Appellant in his second issue contends that the failure of the trial court to grant his motion for severance denied him the right to cross-examine the witnesses against him during trial, in violation of his rights guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and under Article I, Section 10 of the Texas Constitution. He here contends article 36.09 is unconstitutional as applied. We overrule the issue, for several reasons. First, like his first issue, it was not preserved for review. Tex. R. App. P. 33.1(a)(1). No challenge to the constitutionality of article 36.09 as applied, or contention that appellant's constitutional right of confrontation was being denied him because of his joint trial with Parrack, was presented to the trial court. *See Saldano*, 70 S.W.3d at 889; *Briggs v. State,* 789 S.W.2d 918, 924 (Tex.Crim.App. 1990); *McGowan v. State*, 938 S.W.2d 732, 741 (Tex.App.–Houston [14th Dist.] 1997)*, aff'd on other grounds sub. nom.*, *Weightman v. State*, 975 S.W.2d 621 (Tex.Crim.App. 1998). Secondly, the record does not support appellant's contention. Appellant argues that because of the joint trial he was denied his right to confront and cross-examine his co-defendant, who chose not to testify. He argues that he was hampered in presenting his defense due to his inability to cross-examine Parrack regarding evidence found in his possession. Appellant also contends that

he was required to defend himself against allegations of his co-defendant. The confrontation clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965), guarantees the right of an accused to confront and cross-examine witnesses who testify against him in court or whose testimonial out-of-court statements are admitted into evidence against him. *See Crawford v. Washington*, 124 S. Ct. 1354, 158 L. Ed 2d 177, 72 U.S.L.W. 4229 (2004).[5] Appellant relies on *Cruz v. New York*, 481 U.S. 186, 107 S. Ct. 1714, 95 L. Ed. 162 (1987), and *Chavez v. State*, 6 S.W.3d 56 (Tex.App.–San Antonio 1999, pet. ref'd) to emphasize the importance of a defendant's right to confront and cross-examine a co-defendant when out-of-court statements of the nontestifying co-defendant have been admitted into evidence. These cases, however, involve a nontestifying co-defendant's confession that incriminates the other defendant. Here, there was not a confession. The only testimony presented whereby Bryan Parrack implicated appellant as a participant in the planned robbery was given by Parrack's ex-girlfriend, and that testimony was given outside the presence of the jury. No violation of appellant's right of confrontation appears.

The State perceives appellant's second issue to present the contention the joint trial prejudiced his defense because it prohibited him from calling his co-defendant Parrack to testify. The State notes that cases discussing prejudice from the denial of a motion for severance based on the defendant's claimed right to call a co-defendant to testify as a

---

[5]We note *Crawford v. Washington* was decided after the completion of briefing in this case.

witness have required the defendant to demonstrate, among other requisites, that the co-defendant will in fact testify at a separate trial. *See, e.g., Lacy v. State*, 901 S.W.2d 518, 520 (Tex.App.–Tyler 1995, no pet.). Appellant made no such showing. To the degree appellant's second issue presents such a contention, then, it fails. Appellant's second issue is overruled.

In appellant's third issue he argues that the trial court abused its discretion in failing to grant his motion for severance. Article 36.09 mandates severance if evidence shows that a defendant's joint trial would prejudice the other defendant or defendants. *See Davila v. State*, 4 S.W.3d 844, 846-47 (Tex.App.–Eastland 1999, no pet.); *Silva v. State*, 933 S.W.2d 715, 718-19 (Tex.App.–San Antonio 1996, no pet.). To show an abuse of discretion, the proponent for severance bears a heavy burden and must show he was clearly prejudiced by the trial court's failure to grant a severance. *Haggerty v. State*, 825 S.W.2d 545, 548 (Tex.App.–Houston [1st Dist.] 1992, no pet.).

Appellant contends the joint trial was prejudicial to him due to the adverse position of the joint defendants, forcing appellant to defend himself against both the State and his co-defendant. Severance may be granted on the basis of conflicting defenses, if the co-defendant's positions are mutually exclusive in the sense that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. *Mendoza v. State*, 61 S.W.3d 498, 502 (Tex.App.–San Antonio 2001), *aff'd on other grounds*, 88 S.W.3d 236 (Tex.Crim.App. 2002); *see Silva*, 933 S.W.2d at 719. Proof of differing degrees of culpability will not suffice. *Davila*, 4 S.W.3d at 847. Moreover, to be entitled

-14-

to severance based on antagonistic defenses, a defendant "must show by offer of proof or otherwise what his defense would be if he were not being tried with his co-defendant." *Id*., citing *Calverley v. State*, 511 S.W.2d 60, 62 (Tex.Crim.App. 1974), *overruled on other grounds*, *Moosavi v. State*, 711 S.W.2d 58 (Tex.Crim.App. 1986).

In *Silva*, on which appellant elsewhere relies, the defendant Silva presented an alibi defense at trial, contending he was not at the crime scene and the State's witness who identified him as being there was mistaken. 933 S.W.2d at 718. His codefendant Lemos testified at trial, admitting that both he and Silva were present and identifying Silva as the triggerman. The court found error in the trial court's denial of Silva's pre-trial severance motion, noting that evidence of the conflicting positions presented to the court at the hearing on the motion apprised the court that Silva would be prejudiced because if the jury were to believe Lemos's story that Silva was the triggerman, it would necessarily have to disbelieve Silva's alibi defense. *Id*. at 719.

A trial court has a continuing duty to order a severance after trial begins upon a showing of sufficient prejudice. *Aguilar v. State*, 26 S.W.3d 901, 909 (Tex.Crim.App. 2000). A motion to sever based on unfair prejudice is "timely" if made at the first opportunity or as soon as the grounds for prejudice become apparent or should have become apparent, thus providing the trial court an opportunity to rule on the potentially prejudicial evidence at the time it is introduced. *Id*. at 910.

The testimony of the investigator and Parrack's counsel during the pretrial hearing on severance did not demonstrate that the defenses of the two defendants were mutually

exclusive. Neither defendant was willing to put on evidence of his anticipated defense. The trial court did not abuse its discretion by denying the pretrial motion. *See Mendoza*, 61 S.W.3d at 502; *King v. State*, 17 S.W.3d 7, 17 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd); *Davila*, 4 S.W.3d at 847; *Silva*, 993 S.W.2d at 719.

Neither defendant testified at trial. Appellant's defense challenged, through cross-examination, the State's evidence that he was involved in the shooting. As noted, he presented no testimony or other evidence on his own behalf. As also noted, Parrack asserted an alibi defense. Parrack's father testified that his son had been home at the time the shooting occurred.[6] The father did not implicate appellant.

Appellant complains of statements and cross-examination by Parrack's counsel that he contends were designed to cast blame on him and deflect it from Parrack. We agree the record reflects an effort by Parrack's counsel to implicate Jose as the second participant in the attempted robbery. Portions of his cross-examination of Jose can be seen as part of that effort. He also attacked Jose's alibi and his credibility during closing argument and argued that evidence pointed to Jose rather than Parrack. Appellant, though, made a similar attack on Jose's credibility, alibi and character during closing argument, arguing to the jury that the case against him "boils down to" whether they believed Jose's testimony. Appellant's brief on appeal points to six occasions during trial on which appellant again urged the motion to sever. Assuming, without deciding, that appellant's reurging of the motion was timely, based on the prejudice asserted at the time

---

[6]On appeal, appellant also argues that had there been severed trials he would have attacked Parrack's alibi. No such contention was made to the trial court.

-16-

of the reurging, *see Aguilar*, 26 S.W.3d at 909-10, on none of those occasions can we say the evidence demonstrated that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. *See Aguilar v. State*, 39 S.W.3d 700, 703 (Tex.App.–Corpus Christi 2001, pet. ref'd) (on remand); *Silva*, 993 S.W.2d at 719.

Appellant asserts the failure of the trial court to give a limiting instruction with respect to certain evidence as an additional ground of prejudice from the joint trial. Appellant's position is that evidence admissible only against Parrack was available for the jury to consider in convicting appellant. When evidence which is admissible as to one party or for one purpose but not admissible as to another party for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a).

Appellant refers to six instances in which he requested but was denied an instruction that specific evidence was not to be considered against him. Specifically, appellant requested such an instruction in regard to Justin Tarr's testimony that Parrack showed him a .357 Sig Glock handgun that looked like State's exhibit 16. Appellant also requested the same instruction for evidence seized when Parrack's home and vehicle were searched. This evidence consisted of pictures of items found in Parrack's pickup, including a gun magazine that fit State's exhibit 16. He also requested the instruction when the audiotape of a conversation between Parrack's father and a police officer was received as evidence. Appellant also refers to the court's refusal to give the same limiting instruction in the jury charge.

-17-

The trial court's denial of appellant's requested limiting instructions does not demonstrate prejudice from the joint trial. "The key to this claim of prejudice is that evidence would be admissible in a joint trial that would not be admitted in an individual trial." 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 33.44 (2001), citing *McWilliams v. State*, 496 S.W.2d 630 (Tex.Crim.App. 1973). We see no reason why the evidence for which appellant requested a limiting instruction would be inadmissible if he were tried individually. Appellant's third issue is overruled.

Having overruled appellant's issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.